## BIG COTTONWOOD TANNER DITCH CO.
### v. MOYLE et al.

No. 6721.   Decided June 15, 1945.   (159 P. 2d 596.)

See 28 C. J. S., Easements, sec. 72; 17 Am. Jur., 995.

*T. D. Lewis, O. W. Moyle, Jr., Dan T. Moyle,* and *David T. Lewis,* all of Salt Lake City, for appellants.

*Shirley P. Jones,* of Salt Lake City, for respondent.

WADE, Justice.

Plaintiff, respondent herein, an irrigation company, as the owner of easements for its ditches and canals which extended across tracts of land owned by defendants, appellants herein, brought this suit to enjoin the defendants from preventing it from entering upon their lands for the purpose of cementing and waterproofing its ditches.

The defendants are the owners of considerable tracts of land valuable chiefly for residential purposes. They admitted that plaintiff was the owner of easements over their respective lands and that these easements consisted of ditches and canals through which coursed water belonging to plaintiff. Oscar W. Moyle, one of the defendants, claimed to be a tenant in common with plaintiff as to the canals and ditches crossing his land; all of the defendants were stockholders in plaintiff company.

Plaintiff decided to waterproof its ditches to avert a loss of water. Defendants objected to this because there had grown up around the streams beautiful flora and trees which greatly enhanced the value of their properties for residences. The properties were not valuable for farming purposes and if the ditches were waterproofed many trees, such as tag alder and birch, would die for lack of sufficient water. This would decrease the beauty of the tracts to such an extent that their value for residential purposes would be lessened approximately 50%. They also objected that the manner in which plaintiff proposed to make these alterations in its ditches would make the streams more dangerous to children. Besides cementing the ditches, plaintiff proposed to make the channels narrow so that the water could course through in a swifter current, thus saving considerable loss of water from seepage.

The case was tried to the court without a jury and it found that plaintiff's easement entitled it to enter upon defendants' lands for the purpose of constructing, maintaining and repairing its distribution system consisting of ditches, canals, laterals, drains and weirs and also for the purpose of conserving and conveying its water through said distribution system, and therefore granted the injunction. However, the court also found that the manner in which the plaintiff proposed to make its alterations would be more dangerous to children and so it retained jurisdiction of the case to be able to pass upon any proposed alteration for the purpose of determining whether it would be done in such a manner as would not make it more

dangerous to children and would not materially depreciate the value of the land for residential purposes.

Defendants appeal from the order and judgment enjoining them from interfering with the prosecution of the works by plaintiff and plaintiff cross-appeals from the court's finding and judgment that it retain jurisdiction of the case to see that the works are carried out under the conditions imposed in the decree.

At the outset it must be made clear that no water rights are involved in this case. The sole question to be determined by this court is: Will the proposed changes by the owner of the easement rights create a greater burden on the servient tenements?

The extent of an easement is determined by the grant, or if based on a prescriptive right, by its user, and once the character of the easement has been fixed no material change or enlargement of the right acquired can be made if thereby a greater burden is placed on the servient ■ estate. *Stephens Ranch & Live Stock Co.* v. *Union Pac. R. R. Co.*, 48 Utah 528, 161 P. 459; *Nielson* v. *Sandberg*, 105 Utah 93, 141 P. 2d 696; 28 C. J. S., Easements, § 95(b); Wiel, Water Rights in the Western States, 3rd Ed., Vol. 1, Sec. 502.

Appellants contend that respondent's proposal to cement the ditches would be a material change in its easement rights and that such changes would greatly increase the burden on their estates because the ditches as they are now constructed and have been since the inception of the easements allow enough water to seep through to enable tag alder, birch trees and other varieties of plant life to grow and luxuriate. Should the changes be allowed this seepage will not occur and the tag alder and birch trees will die and the other varieties of plant life will not be so abundant, with the result that it will occasion a substantial decrease in the value of the properties for residential purposes. They also contend that the proposed changes will increase the hazard to children and thereby also decrease the value of the properties for residential purposes.

We do not understand appellants to claim that the seepage waters belong to them, but that they object solely on the ground that the change from non-waterproofed ditches to waterproofed ditches would be such a substantial alteration of the easements acquired by respondent as to amount to a material increase on the burden of the servient estates and therefore should not be allowed. It is appellants contention that respondent acquired its easements by prescription; that a prescriptive right is presumed by law to have its inception in a grant founded upon an agreement between the parties and the grant having been lost, the nature, character and extent of the easement is determined by its actual continued user and that the rights of the dominant and servient estates are mutual and that each is entitled to demand that the prescriptive right be exercised in the same manner it was being exercised while the right was being acquired. They cite *Wutchumna Water Co.* v. *Ragle et al.*, 148 Cal. 759, 84 P. 162, 165, in support of these contentions. In that case the defendants had acquired a prescriptive right to divert a certain amount of water from the Wutchumna Water Company's ditch. In determining the rights of the parties to the suit in this water, the lower court attempted to attach a condition that notice be given to the water company before defendants diverted the water. No such notice had been given when the prescriptive right had been acquired. The Supreme Court held that court erred in attaching this condition because

"* * * the rights of a party who has acquired a prescriptive title, and the rights of one against whom said title is acquired, are mutual, and each is entitled to demand that the prescriptive right be exercised in the same manner that it was exercised while it was being acquired."

The theory that a prescriptive right may have attached to it a mutuality of duties found approval in an early New Jersey case, *Carlisle* v. *Cooper*, 21 N. J. Eq. 576 at page 597, wherein the following dictum appears:

"Prescriptions may be upon condition in restraint of the mode in which the prescriptive right is to be enjoyed, or may have annexed to

them a duty to be performed for the benefit of the person against whom the prescription exists."

Among the cases cited in support of this dictum is *Paddock* v. *Forrester*, 3 Mann. & Gran. 903. The court in that case held that in an action for trespass upon the lands of plaintiff wherein the defendant pleaded a right by prescription to enter for the purpose of digging minerals subject to compensating the occupants of the servient estate upon demand for the damages suffered as a result of such entrance, that the prescriptive right of entry and the duty to pay the compensation were one prescriptive right. As authority for this conclusion, the court cites *Gray's Case,* 5 Coke 78 (b),

"where the plaintiff entitled himself to have common of pasture in the place in which, &c.; and the jury found he ought to have the same common, but that every copyholder had used to pay time out of mind for the same common, a hen and five eggs every year. For although the court held in that case, that on this verdict the plaintiff should have judgment 'for the plaintiff need not show more than makes for him, and is of his part,' yet it is expressly said by the court, 'that if the jury had found that the plaintiff should have common, *paying* so many hens and eggs, the issue had been found against him, because it is parcel of the custom.' "

From this it would appear that in the old English law the conception was that an easement may not only be a restriction on the property rights of the servient tenement, but where the facts of either grant or user warrant, it may include a right to a benefit by the servient estate on the part of the dominant tenement.

In the instant case there was no evidence of an actual grant. The rights of plaintiff are based on prescription. From the inception, earthen ditches have been used. There was evidence that defendants' properties had never been valuable for farming but at least for the past fifty years have been valuable for residential purposes. It cannot be gainsaid that the beauty and safety of the premises are very material elements in their value. The court found that the growth of trees and shrubs did materially add to

the beauty of the premises and to their value as suburban homes and that waterproofing the ditches would cause a portion of these to be destroyed, but concluded that the attractiveness of the property would not be appreciably affected. It is difficult for us to see how the destruction of trees which contribute to the beauty of a place will not affect the attractiveness of the properties for residential purposes. The court further found that the proposed manner in which the alterations were to be made would result in a greater hazard to the lives of children and concluded in that respect that it would be a greater burden on the servient tenements and therefore granted the injunction prayed for by plaintiff only on condition that the alterations in the ditches and canals be done in such a manner as not to make these more dangerous to the lives of children who might be on the premises.

In view of the fact that Utah is an arid state and the conservation of water is of the first importance, it is with great hesitancy that we subscribe to any contention which would make it appear to be more difficult to save water. It has always been the public policy of this state to prevent the waste of water. *Salt Lake City* v. *Gardner*, 39 Utah 30, 114 P. 147; *Wrathall* v. *Johnson*, 86 Utah 50, 40 P. 2d 755; *Little Cottonwood Water Co.* v. *Kimball*, 76 Utah 243, 289 P. 116. However, as we have stated, this case does not involve water rights, but is concerned with the respective rights of the easement owner and the servient estates. These rights have to be determined from the facts of each individual case. The American Law Institute in its April 8, 1943 issue of its Proposed Final Draft of Group No. 2 of the Restatement of the Law of Property, Sec. 29, page 84, outlines the factors which should be considered in determining the extent of easements created by prescription. It is there stated:

"In ascertaining whether a particular use is permissable under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to:

"(a) their physical character

"(b) their purpose

"(c) the relative burden caused by them upon the servient tenement."

In the instant case the respondent proposed to change the physical aspect of its easements by cementing the ditches to make them impervious to water and to accelerate the current of the water, thus preventing the loss of a considerable amount of water. It does not propose to change the purpose of the use. Its purpose will still be to course water through its ditches and canals. We are therefore confronted with the question of whether the proposed physical changes will place a greater burden on the servient estates under the facts of this case.

The following comment by the author of the American Law Institute report referred to above has proven to be of considerable aid in determining this question. He states on page 86 of his report:

"* * * A prescriptive interest presupposes an assertion of privilege by the person whose adverse use created it and a failure on the part of the owner of the servient tenement to interrupt the use. An increase in the burden on the servient tenement beyond that caused by the adverse use by which an easement was created *is an undue increase if it is such an increase as it may reasonably be assumed, would have provoked an interruption in the adverse use had the increase occurred during the prescriptive period.* It is an increase such that its tolerance is not implicit in the tolerance of the adverse use by which the easement was created * * *." (Emphasis ours.)

And as an example of what would probably be considered an undue increase in the burden on the servient estate he gives the following example:

"4. For the prescriptive period, A conducts water for irrigation across B's premises in an open ditch without interfering with the use of the water by B. B's cattle were accustomed to drinking from the ditch. B also received benefit from the seepage of the water from it. A attempts to replace the ditch with an underground pipe. Upon the facts given, a court would be justified in holding that he may not do this."

As we have shown, the evidence in the instant case disclosed that the properties of the servient estates had always been chiefly valuable for residential purposes and that the beauty of the premises was an essential element in their value for such purposes. It is reasonable to presume that under these circumstances if the easement owner had attempted to make the changes now proposed before its easement rights had matured, that the owners of the servient estates would have objected then, as they do now, and would have interrupted the user. The fact that the ditches as then constructed would insure a good supply of seepage water to the servient estates may well have been a paramount reason in allowing the ditches to be constructed on their premises. It was error therefore, under the facts of this case, for the district court to find that the proposed changes would not result in a material increase on the burden on the servient estates and to grant the injunction prayer for by respondent.

Reversed and remanded with instructions to dissolve the injunction. Costs awarded to appellants.

TURNER, J., concurs.

LARSON, Chief Justice.

I concur in the order reversing the judgment and dissolving the injunction. Plaintiff's position is a clear and direct attempt to enlarge the burden on the servient tenement. This it may not do. If it deems such action advisable, plaintiff may condemn a right of way for a cemented ditch over the land of defendants, but they cannot enlarge the burden on the servient without just compensation.

McDONOUGH, Justice (concurring in part—dissenting in part).

It is conceded by the appellants that respondent may abandon the ditch in question and conduct its water to the place of use by other means over a different route, thus

depriving appellants of the seepage water which keeps their tag alder and birch trees alive, without responding in damages to the appellants for their loss and the consequent damage to their residential property. They, however, object, as is pointed out in the opinion of Mr. Justice Wade, to respondent in effect imposing a greater burden upon the servient estate than that established by user over the prescriptive period by insisting on a user which would deprive the servient estate of a benefit which came to such estate by the user as established. I agree with the opinion of the court in holding that it may not do so.

I, however, desire to point out that by so holding we do not hold that the owner of a water right must in effect waste his water in order to accord to the owner of a servient estate a benefit which has accrued to it by virtue of the water belonging to the owner of the dominant estate being coursed over the former's land. He may in my opinion abandon the right of way acquired by prescription and condemn a way to carry the water pursuant to Section 100-1-6, U. C. A. 1943. In condemning such right the water owner would, of course, have to pay for the land taken and for any damage done to the portion of the tract or tracts affected. It is to be noted, however, that in such proceeding the appellants, here, were the way condemned along the course of the present ditch, would not be entitled to any damage which would accrue because of the loss of seepage water from the existing ditch. That loss would be the result of the abandonment of the prescriptive way, not by virtue of the acquirement of an easement under eminent domain. The measure of the damages in a condemnation proceeding would be those which would be occasioned had there been no previous user of the easement.

Such being the case, plaintiff should not be prevented from waterproofing its ditch, if it is willing to pay for the right of way across the lands of the defendant. Its prescriptive right should not be a perpetual burden of which it may not divest itself.

The effect of condemning a right of way for a water-proofed ditch along the route of the present ditch, would be that plaintiff could waterproof its ditch over the lands of the defendant by responding in damages as indicated. Whether the cost of doing so would be prohibitive the writer is not advised. But clearly the plaintiff should have an election to do so and it should be accorded that choice in this case.

The lower court should be directed to withhold action on the prayed for injunction until plaintiff be accorded a reasonable time in which to submit to the assessment of damages by a jury as in eminent domain proceedings. I see no reason why such assessment may not be made in the case before the court as well as in a separate proceeding.

Nor do I see any objection to so condemning a right of way because one already exists. Any objection on such ground meets with a two-fold answer, viz: (1) the existing easement is to be abandoned upon securing that provided for by statute; (2) the existing easement is not a satisfactory one burdened as it is by the charge of the servient estate, and being one when so burdened which prevents an efficient transportation of the water.

It is, however, pointed out in brief of the appellants that one of the defendants, Mr. Moyle, is a tenant in common with plaintiff corporation of the ditch in question, and it is suggested that he has a right as such rightful user of the ditch to course his water through it and use it to water his trees by seepage. The answer to this, it seems to me, is clear. Mr. Moyle, the owner of the land, did not acquire any right against Mr. Moyle, the owner of the easement, to have part of the latter's water seep onto the former's land. Insofar as running the ditch and the water across his land, he needed no easement, prescriptive or otherwise to do so. The theory of a lost grant, as to him, would be an absurdity. Nor did he acquire by prescription or otherwise any right as against his cotenant to a previous ditch so that he might thus water his trees.

It is my opinion that the judgment below should be vacated and the cause remanded with directions to proceed as is indicated hereinabove. Should plaintiff elect not to submit to the assessment of damages as outlined, then the injunction should be set aside.

WOLFE, Justice (dissenting).

The opinion of Mr. Justice Wade, in applying the English common law doctrine governing rights acquired by prescription, reaches a result which discourages the development of water conservation methods. The doctrine of acquiring a right by prescription presumes a lost grant. To ascertain the terms of the grant, the law looks to the nature of the use during the prescriptive period. If incidental benefits accrue to the owner of the servient estate, it is presumed that in the absence of said benefits the owner of such estate could have and would have stopped the use before the prescriptive period had run. Thus if after the prescriptive period has run, the benefits are cut off, the servient estate owner is permitted to restrain the use. While the principle is somewhat the same, this taking away of the benefits should probably be distinguished from those cases in which the owner of the easement attempts to make changes thereon which will increase the burden on the land. The former takes away a benefit which accrues as an incident to the use of the easement; the latter imposes additional burdens.

The great majority of the cases invoking this principle involve situations under which the owner of the easement attempts to add additional burdens on the land. The law seems to be settled that this cannot be done. See 28 C. J. S., Easement, § 95.

"The owner of the dominant estate can make no alteration in the character of the easement which would increase the restrictions on the servient estate."

Other cases proceeding on the same theory have held that the owner of a dirt road cannot, without servient estate's approval, cement said road. See *Littlefield* v. *Hubbard*,

120 Me. 226, 113 A. 304; *Burr* v. *Stevens*, 90 Me. 500, 38 A. 547; *Lorenc* v. *Swiderski*, 109 N. J. Eq. 147, 156 A. 465.

So as to a dominant estate owner who has an easement to run water in an open ditch. It is held that such owner cannot substitute a pipe of the same carrying capacity as the ditch, for such a substitution would substitute a new and different servitude. *Allen* v. *San Jose Land & Water Co.*, 92 Cal. 138, 28 P. 215, 15 L. R. A. 93.

It has also been held that no material alteration can be made in the character of an easement although no damage results in consequence thereof to the servient estate, or although it would even be beneficial. *Allen* v. *San Jose Land & Water Co.*, supra.

Cases involving the taking away of benefits which the use of an easement confers on the servient estate apparently do not often arise, but if the common law doctrine of prescriptive rights is followed, it would logically appear that the dominant estate owner could not continue to use the easement after he prevented the accrual of benefits to the servient estate. If we are to presume a lost grant and determine the scope of the grant strictly by the use, the common law will read into the prescriptive right a limitation requiring the owner of the right to continue to use it substantially as it was used during the running of the prescriptive period. If a benefit accrues to the servient estate from the use of the easement, it is reasonable to assume that absent the benefits the use would have been stopped.

In this arid country there is considerable doubt whether the common law of this area should read into the prescriptive use the implied condition that the easement for the conveyance of water would not be changed so as to deprive the servient estate of the benefits accruing from the use. We have in the past refused to follow the English common law where to do so would be contrary to the common interests if applied in this area. Thus in the case of *Winters* v. *Turner*, 74 Utah 222, 278 P. 816, in discussing an earlier Utah case, *Buford* v. *Houtz*, 5 Utah 591, 18 P. 633, which

latter case was affirmed by the United States Supreme Court, 133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618, we noted that the common law principle of liability for trespassing animals was in the early settlement of this state ill adapted to the custom and habit of the people of this area. And in *Buford* v. *Houtz*, the Utah court and the U. S. Supreme Court refused to apply the common law rule to this unsettled country where to do so would practically deprive the owners of livestock of the right to use the public domain. There are numerous situations under which American jurisdictions have refused to follow the English common law because such common law principles were not adapted to the custom, habit and needs of the people. One of these which comes to mind is the refusal to apply and follow the common law riparian rights cases.

There certainly are grounds for questioning whether or not the result reached by Mr. Justice Wade is adapted to the habit, custom, and needs of this state. Less than 5% of the lands of the state of Utah are now under cultivation. Water is the life blood of the state. One may reasonably ask whether or not the common law of Utah should read into the prescriptive easement to carry water the same content as the English common law has applied to rights of way over land. It could reasonably be said that at the time of this grant, which is now presumed to be lost, all parties concerned, knowing of the arid nature of this country, contemplated that at some future time the owner of the water would be required by law to prevent the wasting of water. Possible at the time of the grant, it was not considered wasteful to use water as "carrier-water" to carry the water through leaking ditches, and while it is not necessary so to decide in this case, I am of the opinion that water diverted from the natural channel and used as carrier water has been appropriated if diverted prior to 1903. As the need for water grows more acute, it may be that water used as carrier water cannot be said to be used beneficially. The law would require the closing of the leaks—maybe even the stoppage of loss by evaporation. It would be reasonable

in this arid area to hold that at the time of the supposed lost grant, both parties contemplated that this might be done. If this was contemplated, and the common law of Utah should presume that it was, then the terms of the grant would be presumed to be that the owner of the easement should have the right to carry water across the lands of another beginning with a dirt ditch; that as water became more valuable, it was agreed that the ditch might be improved so as to save the water; that these further developments to conserve water could be made by the owner of the easement so long, and only so long, as the new developments did not put further burdens upon the land. If they did put new burdens upon the land, the owner of the easement should pay for the additional burden. However, in no event was the servient estate to be allowed to obtain an interest in the seepage water or to acquire any other benefits which might incidentally accrue from the use of the easement. No right to the benefits could be obtained by the servient estate because the common law of Utah would not read into the prescriptive use that content. Rather the Utah common law rule would presume that the parties contemplated that these benefits might vanish because of the need to conserve water and made the grant with this very point in mind. Such a presumption is in all probability contrary to actual fact. But so is the basis for the whole doctrine of title by prescription. To fit the concept of title by prescription into established real property law concepts, common law courts adopted the fiction of a lost grant. Ordinarily it had no actual relationship to fact. It resulted in the taking of one man's property and giving of it to another by presuming that the former had made a conveyance to the latter, who had been using the property throughout the prescriptive period. It was a case in which the law inserted a legal basis for the human transaction so as to keep logical the fabric of the law when the owner of the servient tenement either orally permitted the owner of the dominant tenement to use his land or made no protest to his doing so—a transaction arising out of neighborliness without thought of how it

fitted into legal concepts. The law followed the event rather than the event the law, but the law rationalized it. The content of this fiction was no doubt adopted to fit the needs, custom and habits of the people of the times.

The result advocated by me would encourage the development of water conservation methods. It is well adapted to the needs of the people of this arid state. It enables the owner of the servient estate to receive additional compensation for any additional damage to the land itself, but denies him any right to damages resulting from the conservation of the water.

Such a rule would let the landowners (servient estate) obtain damages for any new and additional burdens placed upon their lands by new development, but it would not permit them to claim damages for the loss of the incidental benefits. If such a rule were not adopted, it would be beyond the power of the legislature ever to change it as to existing easements. To be consistent we would be compelled to hold that a statute designed to adopt such a rule would be unconstitutional as depriving the servient estate owner of property without due process of law. For if the rule advocated by Mr. Justice Wade is adopted it would be presumed that the grant of the easement was in return for the benefits. A statute taking away the benefits without also abolishing the easement would have to be held by the courts to be taking property without due process of law.