**UNITED STATES v. SCAVENGERS PROTECTIVE ASS'N.**

**UNITED STATES v. SUNSET SCAVENGER CO.**

Nos. 31285, 31286.

United States District Court
N. D. California, S. D.

May 9, 1952.

Chauncey Tramutolo, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., Chief of Civil Division, William B. Spohn, Sp. Asst. to U. S. Atty., San Francisco, Cal., for plaintiff.

Marion B. Plant, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants.

GOODMAN, District Judge.

Section 402(e) (v) of the Defense Production Act of 1950, 64 Stat. 798 et seq., 50 U.S.C.A.Appendix, § 2061, et seq., exempts rates charged by Public Utilities from the price control authorized by the Act.

The United States commenced these consolidated actions to enjoin alleged violations by the defendants of price stabilization regulations and to recover damages for such violations. Defendants moved for summary judgment in their favor on the ground that they are Public Utilities and thus exempt. § 402(e) (v) Defense Production Act of 1950.

I denied the motions for summary judgment upon the ground that it was necessary to resolve factual questions in order to determine the issue of exemption. Rule 56(c) F.R.C.P., 28 U.S.C.A. Thereupon, by stipulation, the causes were set for preliminary trial upon the issue of exemption. The preliminary trial was held, evidence was offered by both sides and the causes were argued and submitted.

The evidence introduced at the trial shows that defendants have been engaged since 1927 in the business of collecting refuse, pursuant to permits issued in 1927 by the Director of Public Health of the City of San Francisco. The collection of refuse and the rates therefor have been subject to regulation and control by the City and County of San Francisco pursuant to an Initiative Ordinance adopted by the voters in 1932 and subsequently amended in respects not substantially important to the issue here. The initial and subsequent ordinances provide for the licensing of refuse collectors and the issuance of permits by the Board of Health and fix maximum rates or charges for the collection of refuse from homes and apartment houses. The ordinances further make the rates for non-residential or so-called commercial refuse, subject to contract. Disputes as to contract prices are resolved by the Board of Health. Pursuant to the terms of the Ordinances, routes were assigned in one section of the City to one of the defendants and in another section to the other defendant. Since the effective date of the initial ordinance, the defendants have, pursuant to the permits issued to them collected refuse in San Francisco on the routes referred to, at the designated rates for residences and pursuant to contract in the commercial areas. The City has power to revoke the permits for cause.

The evidence shows that throughout the years, whenever complaints have been made concerning rates of commercial contracts, the Board of Health, after investigation, has fixed such rates. The formula for such decision is provided by the City Controller. He determines the cost of refuse collection in each case and such cost plus 10% is thereupon fixed as the rate. The books of the defendants are subject to regular audit by the City.

In the sense that the collection and disposition of garbage is an activity vitally affecting the public health and safety and thus subject to municipal regulation, defendants are Public Utilities.[1]

 Since the Congress did not see fit to define the term "public utility" in the statute, classification as such must depend upon the nature of the activity and the extent and compass of the local rate regulation.[2] This in turn necessarily depends upon the facts and circumstances of each case.

It is contended by the United States that the Ordinances and the method of enforcement thereof are not sufficiently comprehensive, so as to amount to the quantum of regulation that would have the result of classifying the defendants as public utilities. Particularly it is contended that the supervision over commercial contracts is passive rather than affirmative. This, it is claimed, is not the kind of rate regulation which satisfies the anti-inflationary objective of the Defense Production Act.

However the evidence shows that the complicated circumstances of commercial garbage collection in San Francisco are such that thousands of categories of rates would be required. Thus it cannot be said that, under the circumstances, the regulatory scheme is not reasonable or comprehensive or wise.

The terms of the Ordinances, as well as the year by year picture of the mode and means of their enforcement, are persuasive that this is not a nominal or superficial regulation of rates and methods. To the

---

1. See California Reduction Co. v. Sanitary Reduction Works, 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204; Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

2. In Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635,

the Supreme Court held that the Congressional intent was clear that public utilities whose charges were adequately regulated by local government were not in need of further control.

contrary, it appears to be a genuine and good faith regulatory plan for supervising a difficult and complicated vital public service.

Since the defendants are in fact public utilities already under reasonably adequate price control by the City of San Francisco, there is no impelling reason, having in mind the Congressional intent, to supersede such control with that of the Administrator of the Defense Production Act. Davies Warehouse Co. v. Bowles, supra, note 2.

Accordingly, the court holds that the defendants are exempt from the exercise of control over their rates by the Administrator under the Act. Such being the case, the causes should be and are ordered to be dismissed. Counsel will present findings pursuant to the Rules and an order of dismissal.