HAZEL G. COOPER v. STEPHEN SAWYER AND HARRIET B. SAWYER.

No. 4386.

June 25, 1965.

Tsukiyama, C. J., Cassidy, Wirtz, Lewis and Mizuha, JJ.

OPINION OF THE COURT BY WIRTZ, J.

This appeal by respondents, the Sawyers, is from a judgment favorable to petitioner, entered on April 10, 1963, based upon the chancellor's decision on Request for Declaratory Judgment filed November 2, 1962.

The action was begun by a complaint filed September 27, 1960, seeking injunctive relief against the obstruction of an easement held by petitioner-appellee in a piece of property, Lot 156-P (hereinafter referred to as Lot P), owned in fee by respondent Porter and subject to an equitable interest acquired by respondents, the Sawyers, appellants herein, under agreement of sale dated September 9, 1960.

Respondents-appellants filed an answer of denial and a counterclaim. The counterclaim sought injunctive relief alleging misuse and overburdening of the easement, which was appurtenant to petitioner's Lot 156-C (hereinafter referred to as Lot C) by "using it for the benefit of four other lots,"[1] containing apartment units, also owned by petitioner, and "to which it was not appurtenant." Respondents-appellants also asserted that there had been a change in the use of the easement "which resulted in increasing the already unlawful burden."

The pleadings raised the single issue of misuse of the easement resulting in an unlawful burden on the servient tenement, Lot P, owned by respondents-appellants.

After a short hearing, on March 16, 1962, the remaining parties[2] agreed that the chancellor should settle the matter at issue and determine the rights of the parties as in a declaratory judgment proceeding on the record thus far made, upon agreed facts set forth in the stipulation, and upon such further testimony as the chancellor might deem necessary to determine disputed facts if found to be relevant.[3]

---

[1] Lots 156-A, 156-B, 156-F and 156-J-1, hereinafter referred to as Lots A, B, F and J-1, respectively.

[2] On respondent Porter's motion, and with the concurrence of petitioner, the complaint against her was dismissed on March 30, 1962, at the close of the first day of trial.

[3] No additional testimony was deemed necessary.

The chancellor viewed the premises and thereafter entered his decision and judgment. The decision so graphically and concisely states the pertinent facts and geographic relationship of the property involved that the findings of fact are set forth in full:

"5. Petitioner owns lots with apartment units on them near Lot 156-C, rents out her twenty-four apartment units, and owns Lot 156-C. Its 90-foot Diamond Head [east] side adjoins the Ewa 90-foot side of Lot 156-P. On Lot 156-C Petitioner has part of an apartment unit, a diesel hotwater tank structure, a one-automobile open parking space at the mauka end, and makai of this space a garage structure with four spaces for two automobiles each. The hotwater tank structure is for hot water for apartments all of which except one of which are not on Lot 156-C. In 1960 Petitioner built just Ewa [west] of the garage a fence which prevents automobiles from going in or out of the garage except on the Diamond Head [east] side of Lot 156-C. This has increased use of Lot 156-P. Petitioner uses one garage space herself, rents others to tenants in her apartments and to other persons.

"6. The Sawyers, as purchasers under an agreement of sale with Mrs. Porter, own the fee simple equitable title to Lots 156-P and 156-D-1. The 90-foot Ewa [west] boundary of Lot 156-D-1 adjoins the 90-foot Diamond Head [east] boundary of Lot 156-P. The Sawyers hold their Lot 156-P title subject to an easement in Lot 156-P for Lot 156-C. Formerly, before unity of title to Lots 156-P and 156-D-1, an easement existed in Lot 156-P for Lot 156-D-1. This easement gave the owner of Lot 156-D-1 easement rights in Lot 156-P equal to those of the owner of Lot 156-C in Lot 156-P. Unity of title to Lots 156-P and 156-D-1 caused the easement in Lot 156-P for Lot 156-D-1 to merge

in the Lot 156-P fee simple title. Under their fee simple equitable title, the Sawyers have complete rights to use Lot 156-P, subject to the easement rights for Lot 156-C, and have as much right to use Lot 156-P for Lot 156-D-1 as Petitioner has to use Lot 156-P for Lot 156-C. On Lot 156-D-1 the Sawyers have five apartments. They rent the five apartments to tenants and claim a right to let their tenants park three automobiles on Lot 156-P along its Diamond Head [east] boundary and as close as possible to the mauka [north] boundary of Lot 156-P.

\* \* \* \* \* \* \* \*

"8. Lot 156-P is a rectangle, 90 feet long and 10 feet wide. It is black-topped, like a road. A masonry wall, with openings to Lot 156-D-1, where the Sawyers have apartments, runs along its Diamond Head [east] 90-foot boundary.

"9. An ordinary-sized automobile parked on Lot 156-P parallel and as close as possible to the Lot 156-P Diamond Head [east] boundary would force a similar automobile attempting to pass it on Lot 156-P to go partly onto Lot 156-C. If the moving automobile were turning from Lot 156-P into Lot 156-C or backing from Lot 156-C onto Lot 156-P, such a parked automobile nearby would be an even greater interference with its passage.

"10. No access to or from Lot 156-P exists across its mauka [north] boundary. All access between the public streets and Lot 156-P is across its makai [south] boundary. For passage to and from Lot 156-C, traffic is likely to be heavier on the makai [south] than on the mauka [north] portion of Lot 156-P. The closer they are to the mauka [north] and Diamond Head [east] boundaries of Lot 156-P the less will parked

automobiles on Lot 156-P obstruct moving automobiles on Lot 156-P."

The transcript of testimony of the brief hearing held shows that the use of Lot P for ingress to and egress from the garages maintained on Lot C between July 1957 and August 1960 was infrequent and unnecessary until after petitioner built a fence running between Lots C and Lots A and B and along the 20-foot access right of way abutting Lot C thereby leaving only Lot P available for use as a means of ingress and egress to the garages on Lot C. This testimony likewise shows that the garages on Lot C had already been erected and utilized at the time the grant of the easement over Lot P was made to petitioner in 1940.

The above findings of fact by the chancellor are unchallenged under this appeal. As stated by respondents-appellants in their reply brief: "Rarely has there been so much agreement about facts, and so little as to the application of the law to the facts. It is in applying the well established principles of law in the cases to the facts of this case that error of law, not fact, is asserted." Nor could they be successfully challenged as "clearly erroneous" under H.R.C.P., § 52(a).

The following controverted conclusions of law made by the chancellor are the bases of controversy under this appeal:

"11. The easement on Lot 156-P gives the owner of Lot 156-C access to and from Lot 156-C across all of the Diamond Head [east] boundary of Lot 156-C, over all of Lot 156-P, and across all of the makai [south] boundary of Lot 156-P. The easement is for Lot 156-C only; it may be used for Lot 156-C only. Petitioner may use Lot 156-C in any lawful manner: for example, by garaging her automobile on it and by allowing any other persons to garage their automobiles on it. In using Lot 156-C for a garage, she and such other per-

sons may walk or drive over Lot 156-P to or from Lot 156-C and may enter or leave Lot 156-C across any of its boundaries, all without exceeding the terms of the easement over Lot 156-P. Where she or such other persons live, or where she or such other persons are before or after going on Lot 156-C, cannot affect the lawfulness of use of the easement in connection with the garaging of automobiles on Lot 156-C. If a tenant of one of Petitioner's apartments on another lot, whether contiguous to Lot 156-C or not, or any other person garages his automobile on Lot 156-C with Petitioner's approval, his going on Lot 156-P to and from Lot 156-C, whether on foot or in the automobile, in connection with his garaging of his automobile on Lot 156-C, is a proper use of the easement over Lot 156-P for the benefit of Lot 156-C.

        \*     \*     \*     \*     \*     \*     \*     \*

"14. The Sawyers, as owners of the equitable fee simple title to Lot 156-P, may in addition make any use of Lot 156-P which does not interfere with Petitioner's reasonable .exercise of her easement rights in Lot 156-P for Lot 156-C. What additional use may the Sawyers make of Lot 156-P for parking? The easement over Lot 156-P for Lot 156-C is 'a perpetual easement and right of way over, in and upon said Lot 156-P for all purposes for use with and pertaining to said Lot 156-C, including without limitation' the two purposes in the quoted subparagraphs (1) and (2) in paragraph 7 of this decision.[4] The Sawyers may allow automobiles to park on Lot 156-P : but only if the parking does not interfere with Petitioner's reasonable use of the easement for Lot 156-C. This means that any parking allowed by the Sawyers on Lot 156-P must be

---

4 See *infra*.

subject to the immediate moving of the parked vehicle to prevent it from obstructing ingress and egress to and from for Lot 156-C under Petitioner's easement. Persons going to and from Lot 156-C over Lot 156-P under the easement should not be required to wait, even briefly, for an automobile parked on Lot 156-P to be moved. They certainly should not be required to wait until the driver of the parked automobile can be found or awakened or persuaded to move it. The phrases 'for all purposes' and 'without limitation' show that Petitioner's easement over Lot 156-P for Lot 156-C is extremely broad. See *Missionary Society* v. *Evrotas,* 256 N. Y. 86, 175 N. E. 523. The Sawyers and persons acting under authority from them may not park automobiles on Lot 156-P in such manner as to interfere with the use of Lot 156-P by Petitioner and those acting under her authority for ingress and egress to and from Lot 156-C. See *Baker* v. *Koslowski,* 117 Vt. 124, 85 A. 2d 500. 'It is evident that the owner of property over which another person has an easement for a driveway or for ingress and egress may not unreasonably interfere with that person's use of the property for the purposes of the easement by parking his vehicles on the right of way. It appears that the question whether the use made of the way by a servient owner in respect to leaving vehicles therein is an unwarranted interference with the easement depends upon the reasonableness of the use under all the circumstances.' 17A Am. Jur. 747, Easements § 140. See *Thorpe* v. *Brumfitt,* L. R. 8 Ch. 650; *Cannon* v. *Villars,* L. R. 8 Ch. Div. 415; *Tyler Co.* v. *Hansen,* 20 N. J. Super. 309, 90 A. 2d 31, certif. [sic] den. 10 N. J. 344, 91 A. 2d 448; Annotation 37 A.L.R. 2d 944, 948-949. The Sawyers have no absolute right to park.

"15. Petitioner may use Lot 156-P for ingress to and egress from the parking spaces on Lot 156-P [sic], whether by herself or by her guests, invitees, licensees, tenants, etc., who garage their automobiles on Lot 156-C. Petitioner may not use Lot 156-P at all in connection with the hotwater tank structure on Lot 156-C; the structure is nearly entirely for service of apartments not on Lot 156-C, and the hotwater tank is physically connected with those apartments. See *McCullough* v. *Broad Exch. Co.*, [101 App. Div. 566] 92 N. Y. S. 533. Petitioner may not permit parking of any automobile on Lot 156-P, except as stated in paragraph 12 of this decision."

The judgment, consistent with the decision, permitted petitioner the unlimited use of Lot P for ingress to and egress from Lot C, which may be put to any lawful use by petitioner, including the garaging and parking of automobiles.[5]

In the language of the opening brief, the appeal, under the errors specified, "is directed to all portions of the final judgment holding Petitioner-Appellee's easement in Lot 156-P may be used by Petitioner-Appellee for the benefit of other property, no matter how extensive or where located, and that Petitioner-Appellee may authorize any permittees or licensees of hers, wherever residing, including members of the general public, to use her easement in Lot 156-P for garage purposes or any lawful purposes, whether or not such use is, or is limited to, a use properly

---

[5] The decision and judgment, in reliance on *McCullough* v. *Broad Exch. Co., supra*, 101 App. Div. 566, 92 N.Y.S. 533, denied petitioner any use of Lot P in connection with a hotwater tank structure on Lot C, which structure was used to service apartment units not on Lot C, being physically connected by pipelines to such units. This feature is not the subject of this appeal, although it is used by respondents-appellants in arguing inconsistency in the chancellor's decision and judgment in connection with the use of Lot C for garage purposes servicing primarily apartment units also not on Lot C.

appurtenant to Lot 156-C, including provision number 1 of the judgment, and findings and conclusions number 11, 14, and 15 in the Court's decision and provisions number 2, 3, 4, 5, 7 and 8 of the judgment to the extent they incorporate the holdings referred to in said decision and judgment."

The key provision of the judgment to which this appeal is directed reads as follows:

"1. Petitioner, her tenants, licensees, servants, agents, visitors or any other persons so doing with Petitioner's approval (hereinafter referred to as Petitioner's permittees) may use Petitioner's Lot 156-C for any lawful purpose including the garaging and parking of automobiles and in connection with such uses may walk or drive to or from Lot 156-C over Lot 156-P irrespective of where Petitioner or such permitees live."

The remaining provisions of the judgment under attack are amplifications of, or supplementary to, the basic paragraph above quoted.[6]

Respondents-appellants' contention is best summarized in their own language:

"The lower court erred in holding that Petitioner-

---

[6] "2. Petitioner or her permittees may not use Lot 156-P for parking or stopping of automobiles unless the same is incidental to such access to Lot 156-C as provided in Paragraph 1.

"3. Respondents Sawyer and their permittees may use Lot 156-P not exceeding any use thereof hereinabove allowed to Petitioner including parking incidental to ingress or egress to or from Lot 156-D-1 to the same extent as Petitioner and her permittees may so park in connection with their right to use said Lot 156-P as a means of ingress and egress to and from Lot 156-C as provided in Paragraph 1 hereof.

"4. Respondents Sawyer and their permittees, as owners of the equitable title, may in addition to the use provided in Paragraph 3, make any use of Lot 156-P which does not interfere with Petitioner's and Petitioner's permittees' reasonable exercise of Petitioner's easement rights in said Lot 156-P as provided in Paragraph 1, including such parking as does not interfere with Petitioner's reasonable use of the easement in Lot 156-P for the use of Lot 156-C.

"5. Any parking by Respondents and their permittees as provided in Paragraph 4 must be subject to immediate moving of any vehicle parked

Appellee may use her easement in Lot 156-P to gain access to garages maintained by her on Lot 156-C for the benefit of tenants occupying apartments on other lands owned by her or for rental to the general public since such a use is not appurtenant to Lot 156-C only to which uses it is limited by the grant."

The easement, as defined in the instrument, grants:

"* * * unto the Grantees, their heirs and assigns, and their agents, servants and all other persons by their authority, and their use and benefit, *a perpetual easement and right of way* over, in and upon said Lot 156-P *for all purposes for use with and pertaining to* said *Lot 156-C,* including, *without limitation,* the following:

"(1) To lay, maintain, repair, operate and remove *such* conduits, pipes and wires *as are generally constructed with and necessary to a building* which is *used as a dwelling* house; provided, however, that in exercising this right the Grantees shall respect the like right of all others and shall be responsible for any damage to such others' property; and

"(2) *As* a way or means of *ingress* and *egress* to the Grantees, their heirs and assigns, and their agents, servants, licensees and visitors *in common with all*

---

pursuant to Paragraph 4 to prevent its obstructing the ingress and egress of Petitioner hereinabove provided or interfering with her easement in Lot 156-P for herself and her permittees for ingress and egress to and from Lot 156-C.

\*    \*    \*    \*    \*    \*    \*    \*

"7. Petitioner may not permit parking of any automobile on Lot 156-P except as provided in Paragraph 2 hereof.

"8. Respondents Sawyer and their permittees may use Lot 156-P for ingress and egress to and from Lot 156-D-1 and over and above such incidental use as is provided for both parties and their permittees pursuant to Paragraphs 2 and 3, may allow automobiles to park and stop on Lot 156-P only if such parking or stopping does not interfere with the rights of Petitioner and her permittees to use Lot 156-P for ingress and egress to and from Lot 156-C as hereinabove provided and consistent with paragraphs 17 and 18 of said decision."

*others having the like right at all times,* with or without * * * *automobiles, trucks,* and/or *other* power driven conveyances or *vehicles to and from any part* of said *Lot 156-C* of the Grantees.

"TO HAVE AND TO HOLD * * *." (Emphasis added.)

There is no dispute that this language, as the chancellor ruled,[7] establishes a perpetual nonexclusive easement in Lot P appurtenant to Lot C only. The easement embraces two enumerated, separate and distinct rights without limitation of any reasonable use in connection with Lot C. The first is the right to install and maintain "conduits, pipes and wires," while the second is the right of "ingress and egress" by vehicle or otherwise. The only restrictions contained in the grant are applicable exclusively to the first of these enumerated rights, namely, the limitation that the conduits, pipes and wires be such "as are generally constructed with and necessary to a building which is used as a dwelling house," clearly referring to the type and size of the conduits, pipes and wires; and the provision as to the responsibility in the exercise of such right of installation and maintenance for damage to the property of others enjoying the same right. However, as to the right of "ingress and egress," there is no limitation under the grant so long as the use of such right is appurtenant to Lot C or, in other words, "for all purposes for use with and pertaining to Lot 156-C."

Initially, it might be well to clarify the issue here involved so that attention may be focused on the precise

---

7 Paragraph 7 of the chancellor's decision reads in part, in referring to the grant of easement, as follows:

"* * * This language is clear and requires no evidence for its interpretation. It does not create an easement in gross; it creates an easement appurtenant to Lot 156-C. Document 54363 described the easement granted to the Sawyers' predecessor in title with similar wording, referring to Lot 156-D-1 instead of Lot 156-C."

question presented. Much ado has been made over the lawfulness of use to which Lot C has been put. The chancellor held that petitioner may use Lot C in any lawful manner. With this holding respondents-appellants do not disagree. They do contend, however, that the use to which Lot C is now being put by petitioner is unlawful. Their argument is that by virtue of the original subdivision and the map delineating such subdivision, Hawaiian Hotels, Limited, the original owner of the lands here involved, restricted the use of Lot C "as a single dwelling or apartment-hotel lot unit," and that garages for rental use are not a proper use. In support, reference is made to the first right under the grant of easement, but as pointed out above, the grant limits only the type and size of "conduits, pipes and wires" that may be installed and maintained in the easement area. Further, the deed from Hawaiian Hotels, Limited to the petitioner and her late husband of Lot C is not in evidence and we are hardly permitted to speculate on the possible ambiguity in that deed which would permit such extrinsic evidence to be considered in construing a limitation in the deed. *Cf., Midkiff* v. *Castle & Cooke, Inc.,* 45 Haw. 409, 368 P.2d 887. In further support of this contention respondents-appellants invoke the zoning ordinances of the City and County of Honolulu as prohibiting the use of Lot C for garage purposes independent of the appropriate utilization of the other lots for single dwelling or apartment-hotel use. Such ordinances are not in evidence nor were they called to the attention of the chancellor for judicial notice. We cannot now take cognizance of them. *State* v. *Tamanaha,* 46 Haw. 345-346, 379 P.2d 592; *Territory* v. *Yoshikawa,* 41 Haw. 45. Moreover, the lawfulness or unlawfulness of the use of Lot C is not a direct issue in these proceedings. The utilization of the right of ingress and egress over Lot P is the central issue and focal point of this proceeding. Such use must be appurtenant to Lot C

only, and the use of Lot C, whether lawful or not, must not result in an enlargement of the use of the easement over Lot P by directly serving the other lots of petitioner. Our attention then is directed to the area being served by the easement and the purpose for which the easement was granted.

The principles of law involved are well settled and do not appear to be disputed. The owner of the dominant tenement (Lot C) may not subject the servient tenement (Lot P) to servitude or use in connection with other premises to which the easement is not appurtenant. *McCullough* v. *Broad Exch. Co., supra,* 101 App. Div. 566, 92 N.Y.S. 533; *Penn Bowling Recreation Center* v. *Hot Shoppes,* 86 App. D.C. 58, 179 F.2d 64 (D.C. Cir. 1949); *Diocese of Trenton* v. *Toman,* 74 N.J. Eq. 702, 70 Atl. 606. However, where the grant of easement is unrestricted (as it was here as to the right of ingress and egress) the use of the dominant tenement may reasonably be enlarged or changed. *McCullough* v. *Broad Exch. Co., supra; Mahon* v. *Tully,* 245 Mass. 571, 139 N.E. 797. Under an unrestricted grant of a right of way by easement, the possessor of the dominant tenement may use the right of way in a manner which allows the fullest possible development of the dominant estate within the limits of reasonable enjoyment.[8] *Cf., Chapman* v. *Newmarket Mfg. Co.,* 74 N.H. 424, 68 Atl. 868; *United Land Co.* v. *Great Eastern Ry.,* L.R. 10 Ch. 587; *Missionary Society* v. *Evrotas, supra,* 256 N.Y. 86, 175 N.E. 523; *Miller* v. *Weingart,* 317 Ill. 179, 147 N.E. 804; *Annot.,* 130 A.L.R. 768. As stated in *Mahon* v. *Tully, supra,* 245 Mass. 571, 577, 139 N.E. 797, 799:

"With the easement * * * arising from a grant or

---

[8] It is in connection with the question of reasonable enjoyment of the dominant estate that the lawfulness or unlawfulness of the use has bearing. That is, the matter of lawfulness sheds some light on what is reasonable.

reservation and not by prescription the measure of that right is its availability for every *reasonable* use to which the dominant estate may be devoted, and this use may vary from time to time with what is necessary to constitute full enjoyment of the premises. The reservation and the grant * * * are in the most general terms *without limitation or restriction.* Such a way is not limited to the purposes for which the dominant estate was used at the time the way was created. * * *"
(Emphasis added.)

Closely related to the reasonable use of the dominant tenement is the reasonable use and enjoyment of the easement, as determined in the light of the situation of the property and the surrounding circumstances. No definite rule can be stated and the question is usually one of fact for the trier of facts to determine. *Penn Bowling Recreation Center* v. *Hot Shoppes, supra,* 86 App. D.C. 58, 179 F.2d 64 (D.C. Cir. 1949); *Brown & Co.* v. *Raub,* 357 Pa. 271, 54 A.2d 35; 17A Am. Jur., *Easements,* § 113, p. 721.

With these principles in mind we can proceed to a consideration of the facts and the application of the law to these facts. The crux of the appeal as the respondents-appellants contend is that in applying the law to the facts, the chancellor in effect transformed what is clearly an appurtenant easement to an easement in gross.

The test to be applied to the present facts, under the foregoing principles of law, is not so much the burden, as it is from whence and why the burden occurs. Apart from the reasonableness of the use of the easement,[9] the

---

[9] It would seem clear that respondents-appellants do not question the reasonableness of the use and enjoyment of the easement by petitioner. The reply brief states that petitioner in the answering brief "erroneously poses the issue of the appeal as being whether the use petitioner-appellee is making is a reasonable use, rather than a use within the confines of the right created and intended to be created by the grant." Further, the determination of reasonableness is inextricably incorporated in the findings of fact, which are uncontested.

alleged increased burden upon the easement, resulting from fencing off the previously existing entrance and exit from Lot C, is irrelevant. Whether the easement is being used only for "ingress and egress" to Lot C, the dominant tenement, is the focal point. Likewise, respondents-appellants' contention that a "far greater burden" is being imposed over the easement than was contemplated by the original grant is not only insupportable in the light of the chronology of events[10] but also becomes legally insignificant unless that "far greater burden" is imposed not only by the dominant estate but by non-dominant property as well.

The main contention of respondents-appellants is that the easement over Lot P is being used to serve not only Lot C but non-dominant estates (Lots A, B, F and J-1) and that the decision and judgment of the chancellor authorize such use. In support of this contention reliance is mainly placed on the *McCullough* and *Penn Bowling* cases, *supra*. In those cases it was clear that non-dominant property was incorporated into the dominant tenement by a structure which was being served by the easement. There could be no question that the use of the easement had been enlarged to serve non-dominant property.

Respondents-appellants argue that because some of the persons who are allowed to park on Lot C also occupy apartments upon the other lots owned by petitioner, Lot P is being forced to serve non-dominant property. The record clearly establishes that Lot C is an independent, distinct parcel completely unconnected with any of the other holdings of petitioner.[11] It has been, since the onset,

---

[10] The grant of easement in 1940 was made after petitioner and her husband had acquired Lots A, B, C and F in 1937 and J-1 sometime later but before 1940, and after the garages had been constructed on Lot C.

[11] Except as to a very small portion of an apartment cottage located on Lot A which extends into Lot C. This factor is conceded to be immaterial to the question presented on appeal.

used for the sole and distinct purpose of the parking and storage of automobiles, from which separate rentals are derived. The users (apart from petitioner) of Lot C are licensed to do so under agreements reached independently of their incidental use of apartments of petitioner or homes elsewhere.[12] The sole object and primary purpose of these licensees or permittees is to drive over Lot P to park their automobiles on Lot C and to reverse the process when leaving. This object is accomplished when their automobiles are parked on or removed from Lot C. Since there is no direct connection between Lot C and the other holdings of petitioner each licenseee or permittee must cross the boundaries on foot to reach his destination, but Lot P, the easement area, is not utilized as the main or only access to the non-dominant property.

In the chancellor's decision, the authorization to "enter and leave Lot 156-C across any of its boundaries" does not serve to incorporate the adjoining non-dominant property into the dominant estate. Such access from Lot C is not the only nor even the principal means of reaching the adjoining non-dominant property. Alternate entrances to and exits from the dominant tenement do not affect the burden on the easement area or servient tenement. *Benner* v. *Junker,* 190 Pa. 423, 43 Atl. 72; *Williams* v. *James,* L.R. 2 C.P. 577. In addition to the *McCullough* and *Penn Bowling* cases, *supra, Diocese of Trenton* v. *Toman, supra,* 74 N.J. Eq. 702, 70 Atl. 606 and *Miller* v. *Weingart, supra,* 317 Ill. 179, 147 N.E. 804, are relied on by respondents-appellants in support of their position. In all these cases it was clear that the easement serving the dominant estate was utilized as the primary access to the non-dominant property. The purpose in those cases was to unquestionably enlarge the use of the easement to serve property

---

[12] The tenants of apartments, however, were given a priority to rent the garages on an availability basis.

other than that to which it was appurtenant. This is not so here.

As a matter of fact and law, the chancellor correctly ruled that the use of the easement for "ingress and egress" over Lot P to garage automobiles on Lot C, even though some of the persons so utilizing Lot C also occupied rental units on other property of petitioner, was a reasonable and proper use of the easement. We note, however, that his language, in defining petitioner's rights, was misleading under the principles of law above discussed, and the judgment should be modified by limiting petitioner's use of Lot C from "any lawful use" to "any reasonable use" and to provide that any use of the easement (over Lot P) be appurtenant to Lot C.

It follows from the foregoing that the chancellor's determination limiting the allowable use of the servient tenement (Lot P) by respondents-appellants to a use which does not interfere with the reasonable use of the easement is correct as a matter of law. 2 *American Law of Property,* § 8.66 (Casner ed. 1952) at page 279; *Annot.,* 37 A.L.R.2d 944; *Mad River Securities, Inc.* v. *Felman,* 159 Ohio St. 512, 112 N.E.2d 646; *Thorpe* v. *Brumfitt, supra,* L.R. 8 Ch. 650. The principle of law involved is clearly and correctly stated in *Tyler Co.* v. *Hansen, supra,* 20 N.J. Super. 309, 90 A.2d 31, 33 (*cert. denied,* 10 N.J. 344, 91 A.2d 448):

> "* * * the owner of the land subject to an easement has all the rights and benefits of ownership of the fee consistent with the enjoyment of the easement. Conversely, he has no right materially to impair or unreasonably to interfere with the use of the easement by the owner thereof * * *."

Affirmed but remanded for modification of the judgment by limiting the use of the dominant estate (Lot C) to a reasonable use rather than a lawful use, and to pro-

vide that any use of the easement over the servient tene-
ment (Lot P) be appurtenant to the dominant tenement
(Lot C).

*Harriet Bouslog* (*Bouslog & Symonds* on the briefs)
for respondents-appellants.

*John F. Alexander* (*Hughes, Alexander & Smart* and
*David Zundel* on the brief) for petitioner-appellee.