CITY OF ELK CITY, a Municipal Corporation, Appellant,

v.

Jimmy D. COFFEY and Estelline Coffey, husband and wife, Appellees.

No. 49637.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 1, 1977.

Rehearing Denied Feb. 17, 1977.

Certiorari Denied March 29, 1977.

Released for Publication by Order of Court of Appeals March 31, 1977.

Donald Royse, Royse &, Meacham, Elk City, for appellant.

Edwin McComas, Elk City, for appellees.

BRIGHTMIRE, Presiding Judge.

The question raised here is whether a municipality has a right to use residential utility easements as alleyways for trash trucks absent a specific use grant for such. The trial court held it may not and we agree.

## I

Elk City wanted the trial court, in this action, to issue a mandatory injunction requiring defendants, Mr. and Mrs. Coffey, to remove part of a property line chain link fence which enclosed a ten-foot utility easement located along the north side of the lot.

The City rests its quest upon an interpretation of language creating the easement recited in the dedicator's certificate of dedication of the residential land in question and the shape of the easement as drawn on the recorded plat.

The easement dedication in relevant part reads:

" . . . We further certify that we have caused said real-estate to be surveyed into lots, blocks, avenues, alleys,

and utility easements and have caused a plat to be made of said tract, showing dimensions of said lots, building lines, alleys, utility easements, and streets, we hereby designate said tract as 'Roberts Addition' to the City of Elk City, Oklahoma, and hereby dedicate for public use all the streets and alleys within said 'Roberts Addition' and reserve for installation and maintenance of utilities the easements shown on said plat which is hereto attached."

This language City quoted in its petition after alleging that "it is necessary for the City to now utilize this utility easement as an easement to operate the trash truck of the City over and across" it, or—as a later allegation put it—the fence had to be removed to allow "a trash truck to travel down the [easement] and pick up trash and garbage."

City's position here is that the trial judge was wrong in denying it relief because "garbage and trash pick up by the city is the maintenance of a utility within the meaning of the dedication on the plat." Argument in support of this specific point is premised on a more general conclusion that "municipally owned utilities" include "water, sewer and garbage services." It says a reference to this effect was made in *Oklahoma City Hotel & Motor Hotel Ass'n, Inc. v. Oklahoma City,* Okl., 531 P.2d 316 (1974) and that several courts across the country have looked upon garbage collecting as a utility.[1]

■ The term utility is of course a broad one meaning, in a literal sense, usefulness. When used as a reference to certain essential or monopolistic services such as suppliers of natural gas, electricity, telephonic communication, water, sewage disposal, or transportation, it is usually coupled with the word "public." But not all "public utilities" require or acquire easements located on residential property. Those that do are

usually those needing to erect telephone and power poles for carrying highwires, or to run underground cable, or gas, water and sewer lines. Obviously the extent to which the grantee of an easement may use it depends on the scope of the grant.

## II

■ The foundation of Elk City's contention—that it has a right to use the utility easement on the Coffey property for running garbage trucks—is embodied in a grammatically unsound ellipsis of the dedicatorial language contained in its brief which we quote:

> " ' . . . hereby dedicates for public use . . . and reserve for installation *and maintenance of utilities,* the easements shown on the plat . . . .' " (emphasis theirs)

This constructional concept of the reservation proves, argues City, that the language of the grant means only one thing "and that is, that the easement was to be used for vehicular traffic" especially when the fact is considered that the easement as drawn on the dedication plat features a curve having a 25-foot radius at certain alley or easement intersection.

The trouble with City's position is that it is the language, not the shape, of the grant or reservation that controls its purpose— language that, in this instance as City points out, is not ambiguous. Of course, if the language were ambiguous perhaps the way the easement was drawn on the plat might be of some value in reaching a proper construction. *Guild v. Wallis,* 150 Or. 69, 40 P.2d 737 (1935).

■ But here there is nothing doubtful about what the dedicator meant to reserve. The certificate says that "the easements shown on the plat" were reserved "for installation and maintenance of utilities."

1. This is correct. *See, e. g., United States v. Scavengers Protective Ass'n,* N.D.Cal., 105 F.Supp. 656 (1952); *City of Wichita Falls v. Kemp Hotel Operating Co.,* Tex.Civ.App., 162 S.W.2d 150 (1942); *Moore v. Logan,* Tex.Civ. App., 10 S.W.2d 428 (1928).

But it has also been held otherwise. *Olsen v. City of New York,* 177 Misc. 99, 29 N.Y.S.2d 426 (Sup.Ct.1941).

They were not, as City suggests, dedicated "for public use." In context, the latter phrase is an antecedent reference to "all the streets and alleys within" the plat. Indeed, this is the only way the text makes sense because a logical consequence of City's construction of the easement is to give it the same status as a street, or alley or park usable by the public with the added burden of carrying utility installations—a consequence obviously not intended by the dedicator.

### III

The question remains, however, whether the ten-foot utility easement can be construed to include its usage by garbage collecting trucks even if it is not subject to public use? We hold it cannot be. The easement is restricted to utilities which can be installed and which may require maintenance. Examples are those we mentioned earlier—telephone, electric power, gas, water, and sewer. Certain it is that one can neither grammatically nor physically install city garbage collection on a residential easement.

Suppose for a moment that City's contention prevailed and it was allowed to use the easement as a trafficway for garbage trucks. Could not City as a logical extension of its position also insist that if it operates a municipal transportation system that that too being a utility gives it the right to route buses, streetcars or trains over the easement, or land helicopters on it?[2] Could it not build a swimming pool on it? Or use it as a cemetery—a public utility according to *Denton v. City of Sapulpa,* 78 Okl. 178, 189 P. 532 (1920)? And would not all City vehicles have a right to use the easement as a trafficway as well as all trucks and automobiles owned by the telephone, electric and gas companies?

City's contention overlooks the fact that easements vest no title in their possessors. They are but grants of limited land use the construction of which are subject to certain established rules of law. *Story v. Hefner,* Okl., 540 P.2d 562 (1975). Easements are limited to the particular purpose for which they are created and their enjoyment will not be enlarged by implication. *Pinkerton v. Pritchard,* 71 Ariz. 117, 223 P.2d 933 (1950); *Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 197, 159 P.2d 596 (1945), *modified on other grounds,* 109 Utah 213, 174 P.2d 148 (1946). The fee owner can fully exercise his rights of ownership in any manner and for any purpose not inconsistent with the easement and the dominate estate owner may not interfere with such use. *Baker v. Pierce,* 100 Cal. App.2d 224, 223 P.2d 286 (1950); *Cooper v. Sawyer,* 48 Hawaii 394, 405 P.2d 394 (1965); *Thompson v. Smith,* 59 Wash.2d 397, 367 P.2d 798 (1962).

### IV

The conclusion we reach under the circumstances of this case and the relevant law is that the easement in question may not be used as a right of way for vehicular traffic or for picking up garbage and that since City has not shown that the landowners' fence is inconsistent with the installation and maintenance of a public utility akin to those furnishing water, gas or electricity, we have no basis for saying the trial court made other than a correct decision.

Affirmed.

BACON and NEPTUNE, JJ., concur.

---

2. Common carriers are public utilities. *Southern Pac. Co. v. Railroad Comm'n,* 13 Cal.2d 89, 87 P.2d 1055 (1939). So are city airports, *Price v. Storms,* 191 Okl. 410, 130 P.2d 523 (1942); city bathing pools, *City of Belton v. Ellis,* Tex.

Civ.App., 254 S.W. 1023 (1923); city golf courses, *Capen v. City of Portland,* 112 Or. 14, 228 P. 105, 35 A.L.R. 589 (1924); and public parks, *Schmoldt v. City of Oklahoma City,* 144 Okl. 208, 291 P. 119 (1930).