WEINGARTEN REALTY MANAGE-
MENT COMPANY and Scottsdale
Insurance Company, Appellants,

v.

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,
Appellee.

No. 14–09–00860–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 26, 2011.

Kyle Douglas Giacco, Willie B. Daw, III, Houston, for Appellants.

Douglas T. Gosda, Charles Creighton Carr II, Houston, for Appellee.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

JEFFREY V. BROWN, Justice.

Appellants Weingarten Realty Management Company and Scottsdale Insurance Company appeal the trial court's order granting summary judgment in favor of appellee Liberty Mutual Fire Insurance Company and denying their motion for partial summary judgment, for a new trial, for rehearing, and for clarification. We affirm.

I

This case involves an insurance-coverage dispute arising from an underlying lawsuit, *Johnson, et ux. v. Weingarten Realty Management Co.*, No. 2002–46187. In that case, Connie Johnson, a manager of a Fashion Cents retail store, was assaulted by an unknown man who entered the store after business hours. Johnson sued her employer, Norstan Apparel Shops, Inc., d/b/a Fashion Cents, and Weingarten Realty Management Company ("Weingarten Management"), the entity she alleged leased the retail space occupied by Fashion Cents. However, the actual lessor was Weingarten Realty Investors ("Weingarten Investors"), an entity separate and distinct from Weingarten Management. As its name suggests, Weingarten Management only managed the property. Although Johnson amended her petition seven times, the error was never corrected and Weingarten Management never challenged the assertion.

In accordance with the lease between Norstan and Weingarten Investors, Norstan secured a general commercial-liability insurance policy through Liberty Mutual Fire Insurance Company. The policy contained an endorsement naming "all lessors of the premises leased to [Norstan] as additional insureds under the policy." Weingarten Investors therefore became an insured lessor under the Liberty Mutual policy. Weingarten Management, however, maintained its own general commercial-liability policy with Scottsdale Insurance Company. When Johnson named Weingarten Management in her suit,

Weingarten Management initially defended pursuant to a self-insured retention, and Scottsdale later assumed the defense.

Shortly before trial, Weingarten Management made demand on Liberty Mutual for a defense as an additional insured under the Liberty Mutual policy between Norstan and Weingarten Investors. Liberty Mutual refused. The case was eventually tried and the jury found no liability on the part of Weingarten Management. Weingarten Management and Scottsdale then brought this suit against Liberty Mutual for $242,391.57 in incurred defense costs, arguing Liberty Mutual owed a duty to defend because Johnson named Weingarten Management as a lessor in her underlying petition. Weingarten Management and Scottsdale concede Weingarten Management is not actually a lessor of the property. Nevertheless, the appellants argue that the mistaken allegation gave rise to a duty to defend because the "eight-corners rule" restricted the trial court from looking outside the pleadings and insurance policy to determine Weingarten Management was not the true lessor.

In considering the cross-motions for summary judgment, however, the trial court examined evidence extrinsic to Johnson's petition in the underlying suit and the Liberty Mutual policy to determine Weingarten Management was not a lessor and therefore was not entitled to coverage under the Liberty Mutual policy's "additional insured" endorsement. The trial court entered summary judgment in favor of Liberty Mutual and denied the appellants' motions for partial summary judgment, for a new trial, for rehearing, and for clarification. This appeal followed.

## II

In their first issue, the appellants argue the trial court was bound by the eight-corners rule and erred when it considered extrinsic evidence in granting Liberty Mutual's motion for summary judgment. In their second issue, the appellants contend that in its examination of the extrinsic evidence, the trial court erred by finding as a matter of law that Weingarten Management was not a lessor because the terms of the lease require Norstan to name Weingarten Management as an additional insured. In their third issue, the appellants argue there was a fact issue as to whether Liberty Mutual was estopped from contesting that Weingarten Management was a lessor. In their fourth, fifth, and sixth issues, the appellants contend that the trial court erred to the extent its order can be read to deny the appellants' subrogation rights, pre-tender defense costs, and attorneys' fees. Because we find the trial court correctly entered summary judgment in favor of Liberty Mutual, and correctly denied the appellants' motion for partial summary judgment, we overrule appellants' issues one through three and consequently do not reach issues four through six.

## A

We review the trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex.2004). A movant must establish its right to summary judgment by showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157. We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d

566, 568 (Tex.2006) (per curiam). When we review cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.,* 46 S.W.3d 880, 884 (Tex.2001).

■■■ The appellants first argue that the trial court erred in granting summary judgment in Liberty Mutual's favor because it considered evidence in contravention of the eight-corners rule. The eight-corners rule provides that Texas courts may look only to the pleadings and the insurance policy to determine whether a duty to defend exists. *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Merch. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). The allegations in the pleadings are considered in light of the policy provisions without regard to their truth or falsity. *Argonaut Sw. Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965). Even if the allegations are groundless, false, or fraudulent, the insurer is obligated to defend. *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 491 (Tex.2008). Facts outside the pleadings, even those easily ascertained, are not ordinarily material to the determination of whether the duty to defend exists, and allegations against the insured are liberally construed in favor of coverage. *See Nat'l Union,* 939 S.W.2d at 141.

The Supreme Court of Texas has never expressly recognized an exception to the eight-corners rule. But it has acknowledged that other courts have drawn a "very narrow exception" allowing extrinsic evidence "only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church,* 197

S.W.3d 305, 308 (Tex.2006); *see also Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,* 279 S.W.3d 650, 654 (Tex.2009). In *GuideOne,* the court noted the Fifth Circuit's observation that if the Supreme Court of Texas were to recognize an exception to the eight-corners rule, it would likely do so only under circumstances where "it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." 197 S.W.3d at 308–09 (citing *Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 531 (5th Cir.2004)) (emphasis in original). The *GuideOne* court resolved the case before it without expressly approving of this exception because the extrinsic evidence in that case was relevant to both coverage and the merits, so the exception did not apply. *Id.* at 309.

1

The exception was first articulated in *International Service Insurance Co. v. Boll,* 392 S.W.2d 158 (Tex.Civ.App.-Houston 1965, writ ref'd n.r.e.). In *Boll,* the insured's automobile-liability policy excluded coverage of "any claim arising from accidents which occur while any automobile is being operated by Roy Hamilton Boll." *Id.* at 160. Roy was the insured's only son. *Id.* The suit brought against the insured alleged that the insured's son drove the automobile in question but did not name Roy expressly. *Id.* The parties later stipulated, however, that the son referred to in the petition was indeed Roy. *Id.* The court considered the stipulation and found the insurer owed no duty to defend, reasoning that an insurer "cannot be called on to defend a suit against the [insured] in which the petition upon its

face alleges a state of facts not covered by but excluded from the provisions of the policy." *Id.* In the *GuideOne* decision, the supreme court observed that the extrinsic evidence in *Boll* "went strictly to the coverage issue" and "did not contradict any allegation in the third-party claimant's pleadings material to the merits of that underlying claim." *GuideOne*, 197 S.W.3d at 310. In other words, the insurer did not claim Roy Hamilton Boll was not liable for the accident. Rather, the insurer argued that even if he were, there were no potential underlying facts under which his liability could be covered by his father's policy. *See Boll*, 392 S.W.2d at 161 ("Under the facts of this case the petitions filed against [Roy's father] cannot be construed to allege a claim potentially within the coverage of the policy of insurance in question.").

### 2

The Texarkana court of appeals followed *Boll* when it faced a similar scenario in *Cook v. Ohio Casualty Insurance Co.*, 418 S.W.2d 712 (Tex.Civ.App.-Texarkana 1967, no writ). The policy in *Cook* excluded coverage where the insured was "driving an automobile owned by a relative who was a resident of the same household." *Id.* at 714. The insured stipulated that she was living with her mother and was driving her mother's 1953 Studebaker at the time of the accident. *Id.* The *Cook* court followed *Boll* and held that the trial court could consider extrinsic evidence. But the *Cook* court went further by attempting to square its decision with the supreme court's directive to consider a complainant's allegations "without reference to

truth or falsity" and "without reference to what the parties know or believe the true facts to be." *See Heyden*, 387 S.W.2d at 24. In doing so, the *Cook* court contrasted *Boll*, in which the insurer's position was that the policy excluded coverage for liability incurred by the insured's son for any claim, regardless of merit, with the supreme court's holding in *Heyden*, in which the insurer's ultimate position was that the underlying claim could easily be proved meritless. *See Cook*, 418 S.W.2d at 715. The court went on to surmise that the supreme court had implicitly drawn a distinction "between cases in which the merit of the claim is the issue and those where the coverage of the insurance policy is in question. In the first instance the allegation of the petition controls, and in the second the known or ascertainable facts are to be allowed to prevail." [1] *Id.* at 716.

### 3

The Corpus Christi court of appeals first recognized the exception in *Gonzales v. American States Insurance Co. of Texas.*, 628 S.W.2d 184, 186 (Tex.App.-Corpus Christi 1982, no writ). The court in *Gonzales* did not find it necessary to apply the exception because it found the allegations within the petition were sufficient to give rise to the duty to defend, but recognized that courts may consider extrinsic evidence "where the petition does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy. . . ." *Id.* at 186. The Corpus Christi court would later employ the exception it articulated in *Gonzales* in *State Farm Fire & Casualty Co. v. Wade*, 827 S.W.2d 448, 452–53 (Tex.App.-Corpus

---

1. The *Cook* court explained the reasoning behind its assumption this way: "Unless the *Boll* case is misapprehended or the writ action by the Supreme Court is based on something not disclosed in the Civil Appeals' Court opinion, it is evident that the Supreme Court

regarded *Heyden* as distinguishable from *Boll*, and countenanced in the latter a consideration by the trial court of facts ascertained from a source other than the claimant's petition when the trial judge determined the insurer's duty." *Cook*, 418 S.W.2d at 715.

Christi 1992, writ denied). The *Wade* court found the exception applicable because "the facts in the petition do not establish whether there is even a potential for coverage." *Id.* at 451. The underlying suit in *Wade* involved a wrongful-death claim arising out of a boating accident. *Id.* at 449–50. At issue was the applicability of a provision excluding coverage of accidents arising from use of the boat in a "business pursuit." *Id.* at 450–51. The court, however, found it impossible within the eight corners to determine how the boat was used at the time of the accident. *Id.* at 451. But rather than find a duty to defend because facts potentially involving coverage were alleged in the petition, the court considered extrinsic evidence to determine how the boat was used. The court wrote: "It makes no sense to us ... to say that extrinsic evidence should not be admitted to show that an instrumentality (boat) was being used for a purpose explicitly excluded from coverage particularly, when doing so does not question the truth or falsity of any facts alleged in the underlying petition filed against the insured." *Id.* at 453.

This court has not had occasion to consider a case in which the extrinsic evidence went solely to the issue of coverage.[2] Most recently, we declined to apply the exception in a case in which the extrinsic evidence related to both coverage and liability, which we acknowledged then, and again today, is a combination the supreme court explicitly rejected in *GuideOne*. *See D.R. Horton–Texas, Ltd. v. Markel Int'l*

Ins. Co., 300 S.W.3d 773, 786 n. 19 (Tex. App.-Houston [14th Dist.] 2006), *rev'd in part on other grounds,* 300 S.W.3d 740 (Tex.2009).

### B

In *Boll, Cook,* and *Wade,* the terms of a policy exclusion dictated there was no potential for coverage under the facts alleged in the petition. The merits of the underlying claim did not come into play because even if the allegations were true, a policy exclusion made coverage impossible. But Liberty Mutual does not urge the applicability of a policy exclusion. Instead, Liberty Mutual argues that it has no duty to defend because even if the facts alleged are true, Weingarten Management is a stranger to the policy. Although the circumstances giving rise to Liberty Mutual's argument that the exception applies are different from the cases discussed above, the ultimate position is the same—an insurer should not be required to defend when extrinsic evidence can easily establish that the policy does not provide coverage even if all of the allegations in the plaintiff's petition are true.

The rationale behind the eight-corners rule is to require insurers to defend the insured against all claims, even those without merit. *See Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861, 863 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). To the insured, a meritless claim still requires a defense. But the protection the eight-cor-

---

**2.** Federal courts have also recognized and applied the exception. *See, e.g, Northfield,* 363 F.3d at 531; *John Deere Ins. Co. v. Truckin' U.S.A.,* 122 F.3d 270, 272–73 (5th Cir. 1997); *W. Heritage Ins. Co. v. River Entm't,* 998 F.2d 311, 313–15 (5th Cir.1993); *Blue Ridge Ins. Co. v. Hanover Ins. Co.,* 748 F.Supp. 470, 473 (N.D.Tex.1990). Other Texas courts have acknowledged the exception but have declined to apply it on the facts

presented. *See, e.g., AccuFleet, Inc. v. Hartford Fire Ins. Co.,* 322 S.W.3d 264, 273 (Tex. App.-Houston [1st Dist.] 2009, no pet.); *Mid–Continent Cas. Co. v. Safe Tire Disposal Corp.,* 16 S.W.3d 418, 421 (Tex.App.-Waco 2000, pet. denied); *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861, 863–64 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

ners rule provides exists for the benefit only of the *insured*. It is the insured who is entitled to trust that his insurer will defend him against all covered claims, meritorious or not. A stranger to the policy neither needs nor should expect this benefit.

Liberty Mutual does not argue that the claim brought against Weingarten Management is without merit. Rather, Liberty Mutual argues that Weingarten Management is not an insured under the Norstan policy and, as a total stranger to the policy, is not entitled to a defense against any claim. Enforcing the rule under these circumstances does not further the policy underlying the eight-corners doctrine. This is a "pure coverage" question in which Liberty Mutual does not question the merits of the underlying third-party claim. *See GuideOne,* 197 S.W.3d at 308.

■ In light of the facts of this case, we are persuaded of the need for a very narrow exception to the eight-corners rule. The exception applies only when an insurer establishes by extrinsic evidence that a party seeking a defense is a stranger to the policy and could not be entitled to a defense under any set of facts. Under this exception, the extrinsic evidence must go strictly to an issue of coverage without contradicting any allegation in the third-party claimant's pleadings material to the merits of that underlying claim. *See GuideOne,* 197 S.W.3d at 310.

1

Although the supreme court declined to expressly recognize this exception in *GuideOne,* it was not presented with facts under which the exception would potentially apply. *See id.* at 308–09. *GuideOne* concerned an action against a church alleging that its youth minister had sexually assaulted the plaintiff. *Id.* at 307. *Gui-* *deOne* filed a declaratory-judgment action seeking a determination that it had no duty to defend because the youth minister left his job before the policy's effective date. *Id.* The court held the extrinsic evidence GuideOne sought to introduce did not fit the exception because it "directly contradicts the plaintiff's allegations that the [c]hurch employed [the youth minister] during the relevant coverage period, an allegation material, at least in part, to the merits of the third-party claim." *Id.* at 310. The court contrasted the case before it with *Boll,* in which the extrinsic evidence went solely to the coverage issue and did not contradict any allegation in the third-party claimant's pleadings. *Id.* Although GuideOne argued it should not have to defend because it knew the youth minister was not in fact an employee of the church during the period in question, the court reiterated that the duty to defend required GuideOne to establish such facts in defense of its insured, rather than as an adversary in a declaratory-judgment action. *Id.* at 311 (citing *Heyden,* 387 S.W.2d at 25).

There is a critical distinction between *GuideOne* and this case. In *GuideOne,* there was no question that the insurer had a policy with the church at the time of suit and that the insurer was therefore required to defend the church against at least *some* claims. Accordingly, the *GuideOne* court held the insurer owed a defense because the allegations of sexual misconduct were "potentially within coverage, even if the plaintiff's claims were false or fraudulent." *Id.* Put another way, the facts alleged, if true, would support coverage. The insurer's position in *GuideOne* simply was that the claim brought against its insured was meritless and could be easily disproved by showing the minister was no longer employed by the church when the policy became effective. But

although the minister may have left his job before the policy's effective date, the church nonetheless had an effective policy at the time of suit that entitled it to a defense. In contrast, Liberty Mutual makes no comment on the merits of the underlying claim, but rather contends only that Weingarten Management simply could not be an insured as to any claim because it is a total stranger to the policy.

## 2

The case before us is much more similar to *Blue Ridge Insurance Co. v. Hanover Insurance Co.*, 748 F.Supp. 470 (N.D.Tex. 1990), than it is to *GuideOne*. In *Blue Ridge,* Southern Ionics, Inc., issued a company truck to one of its employees, Jimmy Beech, but Jimmy's son, Scottie, was driving when the truck was involved in an injury accident. *Id.* at 471. The injured driver of the other vehicle sued Southern Ionics, Jimmy, and Scottie, and mistakenly alleged in his petition that Southern Ionics had granted Jimmy authority to allow Scottie to drive the truck. *Id.* Jimmy and Scottie's insurer, Blue Ridge, assumed a defense but claimed Southern Ionics's insurer, Hanover, also owed Jimmy and Scottie a defense as the "primary insurer." *Id.* at 472. Hanover refused to defend on the grounds that the policy covered only the employer and persons driving a company vehicle with Southern Ionics's permission. *Id.* Since it was undisputed that Scottie, not Jimmy, was driving the truck, and that under no circumstances was Scottie a permissive driver, Hanover argued it had no duty to defend. *Id.*

As in the case before us, Blue Ridge argued that the false allegation that Scottie was driving the truck with Southern Ionics's permission, granted through Jim-

my, gave rise to the duty to defend. *Id.* at 472–73. But the court held that the authorities Blue Ridge relied on "assume . . . that the person claiming a right to a defense is an insured. Blue Ridge's case authorities do not mean that a person who is not an insured under an insurance policy is to be treated as one for defense purposes just because of false allegations made by the damage suit plaintiff."[3] *Id.* at 473. The court accordingly held it could consider extrinsic evidence to determine that neither Jimmy nor Scottie was an insured under the Hanover policy. *Id.*

The "pure coverage" question the court faced in *Blue Ridge* did not involve the merits of the case because the insurer took the position that neither Jimmy nor Scottie were insureds, and therefore could not be considered permissive drivers in *any* case. Although it is true that any allegation, true or false, is sufficient to give rise to a duty to defend when the claim is potentially covered under the insured's policy, the *Blue Ridge* court appropriately drew the distinction that "[t]he status of 'insured' is to be determined by true facts, not false, fraudulent, or otherwise incorrect facts that might be alleged." *Id.*

## 3

The appellants contend that because the policy named any of Norstan's lessors as additional insureds, Liberty Mutual was obligated to defend anyone sued in that role, regardless of whether the party is actually a lessor. To support their position, they cite *AccuFleet, Inc. v. Hartford Fire Insurance Co.*, 322 S.W.3d 264 (Tex. App.-Houston [1st Dist.] 2009, no pet.), and *Liberty Mutual Insurance Co. v. Graham,* 473 F.3d 596 (5th Cir.2006), as examples of cases in which courts adhered to the eight-

---

**3.** The court did not cite which authorities Blue Ridge presented, but did state the cases stood for the proposition that the duty to defend arises "even if 'the allegations of the suit are groundless, false, or fraudulent.' " *Blue Ridge,* 748 F.Supp. at 473.

corners rule "if facts were plead[ed] that would qualify the party as an insured."

The appellants cite *AccuFleet* as a case where the court ignored extrinsic evidence and "specifically looked at the plaintiff's pleadings to determine whether a party was an additional insured, and therefore, owed a defense under the policy." The underlying case involved an accident in which a Continental Airlines ground tug rear-ended an AccuFleet vehicle stopped at a stop sign on an airport tarmac. *AccuFleet*, 322 S.W.3d at 268. AccuFleet was a contractor providing services to Continental, and, pursuant to the terms of their contract, AccuFleet was required to name Continental as an additional insured under its liability policy. *Id.* An AccuFleet employee and passenger in the rear-ended vehicle sued AccuFleet and Continental for alleged injuries, both of which demanded a defense from AccuFleet's insurer. Continental was not named in the policy, but claimed it was owed a defense under an "additional insured" provision that extended coverage to any parties AccuFleet was required by contract to include in its policy. *Id.* The insurer did not respond to either demand, and Continental eventually settled the claim. *Id.*

The court acknowledged that the contract required AccuFleet to name Continental as an insured, and that the policy's "additional insured" provision included parties AccuFleet was required by contract to name as insureds. *Id.* at 271. The court interpreted the policy, however, to further require that an "additional insured" also meet the definition of "insured" from a separate section of the policy, a requirement Continental could not satisfy. *Id.* at 271–72. Therefore, the court was able to determine coverage did not exist for Continental under the facts alleged in the petition and the terms of the policy.[4] *See id.*

*AccuFleet* stands for the unremarkable proposition that the eight-corners rule applies in the vast majority of cases. The appellants are correct that the court "specifically looked at the plaintiff's pleadings to determine whether a party was an additional insured, and therefore, owed a defense under the policy." But this observation does not support the appellants' position that the policy in this case required Liberty Mutual to defend any party sued in the role of lessor. *AccuFleet* would further the appellant's position if the court held that, based on the information available in the pleadings and policy, the insurer owed Continental a defense even though extrinsic evidence could show that (1) there was no potential for coverage even if the pleaded facts were true, or (2) Continental was actually a total stranger to the policy. Instead, the *AccuFleet* court was able to resolve the question of coverage within the eight-corners rule, and in doing so it *declined* to hold the insurer owed Continental a defense because the eight corners told the court all it needed to know about Continental's status as an insured.

Because *AccuFleet* did not recognize a duty to defend that would not have been recognized had the court been allowed to examine extrinsic evidence, it does not further the appellants' argument. It certainly does not stand for the proposition that Liberty Mutual was obligated to defend any party sued in the role of Norstan's lessor without regard to the party's actual lessor status. That simply is not a reason-

---

4. The *AccuFleet* court determined that Continental did not qualify for liability coverage because the accident in question did not involve Continental's use of a covered AccuFleet vehicle, but Continental's use of one of its own vehicles. 322 S.W.3d at 271–72. The express language of the policy did not cover such a loss. *Id.*

able reading of the policy. *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 202 (Tex.2004) (holding the plain language of an insurance policy must be given effect when the parties' intent may be discerned therefrom); *see also Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex.2006) (holding if the policy language has only one reasonable interpretation, then it is not ambiguous and is construed as a matter of law). Liberty Mutual contracted to insure Norstan and its actual lessors, not to defend every party sued in the capacity as a lessor even though they are strangers to both the lease and the insurance policy.

### 4

*Liberty Mutual Insurance Co. v. Graham* is similarly distinguishable. Graham was involved in an accident in his company vehicle after he left a restaurant where he had consumed alcohol while celebrating his birthday. *Graham,* 473 F.3d at 597. He was sued for negligence and his employer was sued for negligently entrusting the vehicle to Graham. *Id.* at 598. The insurer brought an action for declaratory judgment asserting it was not required to defend Graham because his use of the vehicle was unauthorized and in contravention of the employer's vehicle-usage policy. *Id.* The insurer sought to introduce the employer's vehicle-usage policy, which restricted use of vehicles to "company related business," as well as evidence of Graham's intoxication. *Id.* at 598–99. In rejecting the insurer's argument that the court should apply the exception, the court found "the complaint alleges facts sufficient to infer Graham was driving with [the employer's] express or implied permission. Since the policy unambiguously covers permissive drivers, the duty to defend is invoked." *Id.* at 603.

Ultimately, the *Graham* court adhered to the eight-corners rule because the *potential* for coverage existed under the facts alleged by the underlying plaintiff. *See id.* at 603 & n. 25. If, in deciding whether the insurer owed a duty to defend, the court had explored whether Graham was actually intoxicated or had violated the vehicle-usage policy, it would have impermissibly delved into the merits. Furthermore, while the insurer in *Graham* might have been able to easily prove the claim meritless upon mounting a defense, it did not argue that Graham was a total stranger to the policy. To the contrary, it was undisputed that, at least in some circumstances, Graham was a permissive user of the company truck.

The extrinsic evidence that might have been employed in *Graham* is utterly different from that which the trial court used in this case. The merits of the claim in the underlying case were not touched by the trial court's inquiry in the coverage dispute. *Graham* is simply inapposite.

### C

The appellants further argue that even if we apply an exception to the eight-corners rule, the extrinsic evidence in this case addresses not only the coverage question, but also the merits of the underlying claim, a combination the supreme court expressly rejected in *GuideOne. See* 197 S.W.3d at 310. The extrinsic evidence concerns the merits, the appellants argue, because the allegation that Weingarten Management was a lessor was "directly material" and "necessary" to show Johnson was a business invitee and owed a duty of care by Weingarten Management. The appellants further argue that because the terms of the lease would establish that Weingarten Management retained a right of control over the property, the allegation that Weingarten Management was a lessor

was material in establishing the scope of the duty owed to Johnson.

It is true that in a claim properly brought against an insurer *by an actual insured*, the existence and terms of a lease could be a significant factor in determining whether a landlord retained control over a leased premises. But here Liberty Mutual seeks to introduce evidence that Weingarten Management is not a lessor not to undermine the merits of the plaintiff's claim but to establish that Weingarten Management is a stranger to the policy. The appellants may see the lessor allegation as important to the merits of their case, but Liberty Mutual's interest in contradicting it is confined to disputing Weingarten Management's status as an "insured."

We also note that in each of the previous instances in which an exception to the eight-corners rule has been applied, the insurer sought to use a policy exclusion, combined with extrinsic evidence, to show that the policy excluded coverage even if the underlying allegations were true. The strict requirement that the proposed extrinsic evidence not contradict the plaintiff's underlying allegations sprang forth from the rationale behind the eight-corners rule, which requires insurers to defend their insureds against all covered claims regardless of merit. Allowing an insurer to admit extrinsic evidence contradicting a plaintiff's allegations to establish the applicability of a policy exclusion would circumvent the very reason for the eight-corners rule.

■ Therefore, under the narrow exception created by the facts in this case, we conclude that an insurer marking a party seeking a defense as a total stranger to the policy does not contradict allegations material to the underlying merits when it shows by extrinsic evidence that there are no facts that could be pleaded under which the party would be entitled to a defense.

### D

The eight-corners rule prevents an insurer from refusing to defend an insured based on the lack of merit of the plaintiff's case. *See Tri–Coastal Contractors, Inc.,* 981 S.W.2d at 863. But applying the eight-corners rule to pure-coverage questions does not advance this policy. Rather than provide a vital protection to the insured, the rule would impose on insurers the duty to defend parties who—by accident or otherwise—plead themselves into an insurance policy to which they were previously a stranger. If a contract does not exist, a duty to defend should not be allowed to spring into existence based on artful or inartful pleading.

Weingarten Management never contracted with Liberty Mutual to provide insurance, nor was it designated as an additional insured under the Liberty Mutual policy. Weingarten Management's only claim to a defense from Liberty Mutual is a presumably accidental misidentification in the underlying petition that cited Weingarten Management as a lessor when it was not. But Liberty Mutual's policy with Weingarten Investors requires it to defend actual lessors against any claim potentially within the policy. It does not require it to defend every entity mistakenly believed to be a lessor.

We hold the trial court did not improperly consider extrinsic evidence in granting summary judgment in Liberty Mutual's favor and denying the appellants' partial motion for summary judgment, motion for rehearing, motion for new trial, and motion for clarification. The appellants' first issue is overruled.

### III

■ The appellants argue in their second issue that in its consideration of ex-

trinsic evidence the trial court erred in finding there was no fact issue as to whether Weingarten Management could be considered a lessor under the policy because the lease between Weingarten Investors and Fashion Cents required the latter to name Weingarten Management as an additional insured. The appellants urge us to interpret the word "lessor" in the policy's "additional insured" endorsement to include any entity required by the lease to be named as an insured.

The appellants cite no authorities to support their argument other than the general proposition that courts should construe insurance policies broadly in favor of coverage and that if a policy is susceptible to more than one interpretation, the uncertainty must be resolved by adopting the construction most favorable to the insured. *See State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex.1993). The policy's use of the word "lessor," however, is not susceptible to multiple interpretations. It is not a reasonable interpretation to suggest that by using the word "lessor" the parties intended to incorporate unidentified and unlimited parties named in another contract as additionally insured parties. Appellants' second issue is overruled.

IV

The appellants argue in their third issue that the trial court erred in granting summary judgment because there is a fact issue as to whether Liberty Mutual is estopped from denying Weingarten Management is a lessor. The appellants' argument proceeds as follows: First, a certificate of insurance was issued by "Liberty Mutual Group" to both Weingarten Investors and Weingarten Management listing both a workers' compensation policy and a general liability policy in a manner that the appellants contend made no distinction between the various Liberty entities providing the policies. Then, Liberty Insurance Company, Norstan's workers' compensation carrier, intervened in the underlying suit and adopted all of the plaintiff's allegations. Additionally, the appellants contend that subsequent correspondence did not distinguish between the entities. Therefore, appellants argue, Liberty Mutual Group represented to Weingarten Management that one carrier issued both policies and Liberty Mutual is estopped from arguing Weingarten Management's lessor status because Liberty Insurance Company arguably adopted all of the plaintiff's allegations.

■■ A judicial admission results when a party makes a statement of fact that conclusively disproves a right of recovery or defense currently asserted. *See Richards v. Comm'n for Lawyer Discipline,* 35 S.W.3d 243, 247 (Tex.App.-Houston [14th Dist.] 2000, no pet.) To constitute a judicial admission, the statement relied on must be (1) made in the course of a judicial proceeding; (2) contrary to an essential fact or defense asserted by the person making the admission; (3) deliberate, clear, and unequivocal; (4) related to a fact upon which judgment for the opposing party could be based; and (5) the enforcement of the admission would be consistent with public policy. *Id.; see also Brown v. Lanier Worldwide, Inc.,* 124 S.W.3d 883, 900 (Tex.App.-Houston [14th Dist.] 2004, no pet.).

■ Assuming *arguendo* that all the above elements are fulfilled and that the statement constitutes a judicial admission on the part of Liberty Insurance Company, the appellants have cited no authority supporting their argument that this admission should be imputed to Liberty Mutual. Although the appellants present evidence that Liberty Mutual Group may have been less than clear in distinguishing between

its subsidiaries in a certificate of insurance and in correspondence, it has not directed us to any authority standing for the proposition that all the Liberty entities should therefore be treated as the same for purposes of determining whether one and therefore all made a judicial admission. As such, the argument is waived. See Tex.R.App. P. 38.1(i); *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex.App.-Houston [14th Dist.] 2002, no pet.) Appellants' third issue is overruled.

\* \* \*

Because we have overruled appellants' first through third issues and held Liberty Mutual owed no duty to defend Weingarten, we do not reach appellants' issues four through six. For the foregoing reasons, we affirm the trial court's judgment.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

Under Texas law, the eight-corners rule is used to determine whether an insurer has a duty to defend. The Supreme Court of Texas has never recognized an exception to this rule, and in several cases, our high court has pronounced that if it were ever to recognize an exception to this rule it would do so only within a very narrow set of circumstances. Under these cases, this court may not recognize an exception to the eight-corners rule outside the context specified by the Supreme Court of Texas. Because the case under review does not fit within this context, the majority errs in recognizing an exception to this important rule of Texas jurisprudence.

1. Before today, the Fourteenth Court of Appeals had not recognized any such exceptions

## General Principles of the Eight–Corners Rule

In determining a duty to defend, Texas courts follow the eight-corners rule, also known as the complaint-allegation rule: "'an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations.'" *Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex.2008) (quoting *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). Thus, "'[e]ven if the allegations are groundless, false, or fraudulent the insurer is obligated to defend.'" *Id.* (quoting 14 Couch on Insurance § 200:19). We resolve all doubts regarding the duty to defend in favor of the existence of a duty, and we construe the pleadings liberally. *Id.* If the petition does not contain factual allegations sufficient to clearly bring the underlying case within or without the coverage, the general rule is that the insurer is obligated to defend if, potentially, there is a case under the petition within the coverage of the policy. *Id.* The duty to defend is not affected by facts ascertained before suit or developed in the course of litigation, or by the ultimate outcome of the suit. *Id.* If a petition potentially includes a covered claim, the insurer must defend the entire suit. *Id.*

Despite various requests over the years to recognize exceptions to the eight-corners rule, the Supreme Court of Texas has never done so.[1] *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654–56 (Tex.2009). Though, as explained below, our high court discussed in *GuideOne* the possibility of recognizing an exception to this rule, it did

either.

not do so, and our high court has continued to emphasize the importance of adherence to the eight-corners rule. *See Burlington Northern and Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 334 S.W.3d 217, 219 (Tex.2011) (stating that "the determination as to duty to defend is according to the eight-corners rule wherein only the pleadings and the policy language are considered"); *D.R. Horton–Texas Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 744 (Tex.2009) (stating that the "analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine"); *Nokia, Inc.,* 268 S.W.3d at 497 (stating that "while Maryland has recognized exceptions, in some limited circumstances, to the eight-corners rule, Texas has not") (quotations omitted); *GuideOne Elite Ins. Co.,* 197 S.W.3d at 308–11 (discussing possibility of adopting exception to eight-corners rule); *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002) (stating that "[a]n insurer's duty to defend is determined solely by the allegations in the pleadings and the language of the insurance policy").

### Judicial Dicta as to Any Potential Exception to the Eight–Corners Rule

In *GuideOne,* the Supreme Court of Texas held that it would not recognize an exception to the eight-corners rule under the circumstances of that case, which are not the same circumstance as those in the case under review. *See GuideOne Elite Ins. Co.,* 197 S.W.3d at 308–11. Nonetheless, beyond this holding, the *GuideOne* court made deliberate statements for future guidance in the conduct of litigation. *See Edwards v. Kaye,* 9 S.W.3d 310, 314 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). These statements are judicial dicta binding on this court. *See id.*

According to the United States Court of Appeals for the Fifth Circuit, the teaching of *GuideOne* is that, though the Supreme Court of Texas may never recognize an exception to the eight-corners rule, if it were to recognize an exception, it would do so only in the narrow circumstance in which " 'it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.' " *Liberty Mut. Ins. Co. v. Graham,* 473 F.3d 596, 600–601 (5th Cir.2006) (quoting *GuideOne Elite Ins. Co.,* 197 S.W.3d at 309, and applying Texas law). After the Fifth Circuit decided *Graham,* the Supreme Court of Texas, in the Nokia case, embraced this characterization of *GuideOne. See Nokia, Inc.,* 268 S.W.3d at 497–98. The *Nokia* court described the foregoing narrow situation in which an exception to the eight-corners rule might be recognized. *See id.* at 497. The court then concluded that, even if the extrinsic evidence in *Nokia* pertained solely to coverage, the circumstances in *Nokia* did not fit within the narrow situation in which an exception might be granted because it was not " 'initially impossible to discern whether coverage is potentially implicated.' " *Id.* at 498 (quoting *GuideOne Elite Ins.,* 197 S.W.3d at 309).

The Supreme Court of Texas's opinion in Pine Oak Builders, Inc. also supports this reading of *GuideOne. See Pine Oak Builders, Inc.,* 279 S.W.3d at 654–55. In *Pine Oak Builders,* the high court concluded that the potential exception to the eight-corners rule mentioned in *GuideOne* did not apply because the proffered extrinsic evidence contradicted allegations of the underlying petition. *See id.*

In the case under review, the majority concludes that, under *GuideOne*, the following circumstances must be present before the Supreme Court of Texas might consider an exception to the eight-corners rule: "the extrinsic evidence must go strictly to an issue of coverage without contradicting any allegation in the third-party claimant's pleadings material to the merits of that underlying claim." *Ante* at p. 865. Though parts of the *GuideOne* opinion examined in isolation might lead to the conclusion the majority reaches today, subsequent supreme court decisions have clarified that the situation in which the supreme court might recognize an exception are more constricted than the majority recognizes. *See Pine Oak Builders, Inc.*, 279 S.W.3d at 654–55; *Nokia, Inc.*, 268 S.W.3d at 497–98; *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308–10. Under current law, the Supreme Court of Texas will not consider an exception to the eight-corners rule unless " 'it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.' " *Nokia, Inc.*, 268 S.W.3d at 497 (quoting *GuideOne Elite Ins. Co.*, 197 S.W.3d at 309). The majority misses the mark in its description of the circumstances under which the Supreme Court of Texas might consider an exception to the eight-corners rule.

### This Case Does Not Fall With the Potential Narrow Exception Described by the Supreme Court of Texas

For several reasons, the circumstances of the case under review do not fall within the narrow situation described by the Supreme Court of Texas as a potential exception to the eight-corners rule. In her pleadings in the underlying case, Connie Johnson alleged that Weingarten Realty Management Company owned the real property on which she was assaulted and that Weingarten had leased the store location to Johnson's employer at the time of the robbery and assault. Johnson also alleged that Weingarten (1) was in control of the premises on which Johnson's injuries occurred when she sustained these injuries, (2) knew that the area was filled with crime, was extremely dangerous, and required security measures, (3) knew of numerous incidents shortly before the incident forming the basis of the Johnson's lawsuit, but took no action to provide for the safety of those who were working at the store or in the shopping center in which the store was located, (4) failed to provide lighting in the parking lot and common areas outside of the store where Johnson worked, (5) failed to provide adequate security for the commercial center in the evenings, and (6) allowed two large concrete pillars to obstruct the view from inside the store of persons who could be laying in wait. Johnson alleged that Weingarten's tortious conduct proximately caused Johnson's damages. Johnson asserted various claims including a negligence claim based on premises liability. Under the allegations in the underlying lawsuit, it is not initially impossible to discern whether coverage is potentially implicated. On this basis, alone, the situation in the case under review does not fit within the circumstances under which the Supreme Court of Texas might consider an exception to the eight-corners rule. *See Nokia, Inc.*, 268 S.W.3d at 497–98; *Graham*, 473 F.3d at 603.

Furthermore, the extrinsic evidence in the case under review shows that Weingarten was not the lessor of the premises in question at any time material to Johnson's claims. But this extrinsic evidence contradicts the allegation in Johnson's petition

that Weingarten was the lessor of the premises at the time of the occurrence made the basis of Johnson's suit. Therefore, the potential exception does not apply because the extrinsic evidence engages the truth or falsity of a fact alleged in the underlying case. *See Pine Oak Builders, Inc.*, 279 S.W.3d at 654–55.

Finally, the extrinsic evidence showing that Weingarten was not the lessor of the premises in question overlaps with the merits. Johnson alleged that Weingarten owned, leased, and yet still controlled the premises in question when she was robbed and assaulted. A landlord who retains the right to control the security and safety of the premises owes a duty to a tenant's employees to use ordinary care to protect the employees against an unreasonable and foreseeable risk of harm from the criminal acts of third parties. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 22–23 (Tex.1993). The terms of the lease and Weingarten's status as a lessor are relevant to the issue of whether Weingarten retained the right to control the security and safety of the premises. *See Tidwell*, 867 S.W.2d at 22–23. In addition, if, as alleged by Johnson, Weingarten was the lessor of the premises when she was robbed and assaulted, then Weingarten would be an insured under Liberty Mutual's insurance policy. Therefore, the extrinsic evidence does not go solely to coverage; instead, the extrinsic evidence touches upon both coverage and the merits of the underlying case.[2] *See GuideOne Elite Ins.*, 197 S.W.3d at 310.

The majority relies upon the opinion in *Blue Ridge Insurance Company v. Hanover Insurance Company*, in which a federal district court concluded that "[t]he status of 'insured' is to be determined by true facts, not false, fraudulent, or otherwise incorrect facts that might be alleged by a personal injury claimant." 748 F.Supp. 470, 473 (N.D.Tex.1990). But, in *Graham*, the trial court expressly relied upon this legal standard from *Blue Ridge* and held that there was an exception to the eight-corners rule because the extrinsic evidence showed that the party alleging a duty to defend was not an insured under the policy. *See Liberty Mut. Ins. Co. v. Graham*, 407 F.Supp.2d 808, 813–14 (N.D.Tex.2005), *rev'd*, 473 F.3d 596 (5th Cir.2006). On appeal, the Fifth Circuit held that there was a duty to defend based upon the legal standard from *GuideOne*, which is significantly different than the legal standard followed in *Blue Ridge*. *Compare Graham*, 473 F.3d at 600–601, *with Blue Ridge Ins. Co.*, 748 F.Supp. at 473. Therefore, though the Fifth Circuit in *Graham* did not expressly disapprove of the *Blue Ridge* legal standard, it impliedly disapproved of the *Blue Ridge* legal standard in favor of the legal standard from *GuideOne*. *See Graham*, 473 F.3d at 600–603.[3]

It is possible to discern whether coverage is potentially implicated by Johnson's petition. The extrinsic evidence overlaps with the merits of Johnson's claims and engages the truth or falsity of a fact alleged by Johnson. Therefore, this case does not fall within the situation under

---

2. The terms of the lease and Weingarten's status as a lessor are material to the merits of Johnson's negligence claim. *See Centeq Realty, Inc.*, 899 S.W.2d at 197; *Tidwell*, 867 S.W.2d at 22–23. Thus, the circumstances of this case also do not satisfy the legal standard followed by the majority.

3. In addition, following the Supreme Court's *GuideOne* opinion, the First Court of Appeals determined whether a party fell within the definition of "insured" under an insurance policy based upon the allegations in the underlying petition. *See AccuFleet, Inc. v. Hartford Fire Ins. Co.*, 322 S.W.3d 264, 271–72 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

which the Supreme Court of Texas might recognize an exception to the eight-corners rule. *See Pine Oak Builders, Inc.*, 279 S.W.3d at 654–55; *Nokia, Inc.*, 268 S.W.3d at 497–98; *GuideOne Elite Ins.*, 197 S.W.3d at 309. For this reason, the trial court erred in granting Liberty Mutual's motion for summary judgment and in ruling that Liberty Mutual had no duty to defend as a matter of law. Because this court affirms the trial court's summary judgment, I respectfully dissent.