**Majority Opinion of March 15, 2012, Withdrawn; Affirmed and Corrected Majority and Dissenting Opinions filed March 27, 2012.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-11-00228-CV**
**NO. 14-11-00257-CV**

---

**PATRICIO D. SANCHEZ, Appellant,**

**V.**

**SOUTHAMPTON CIVIC CLUB, INC., Appellee.**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-45026**

---

## CORRECTED MAJORITY OPINION

This court withdraws its opinion of March 15, 2012, and issues a corrected opinion in its place to include the number of the consolidated appeal.

# I

This is an appeal over the proper interpretation of deed restrictions. The trial court granted a partial summary judgment for appellee Southampton Civic Club, Inc., and denied appellant Patricio D. Sanchez's cross-motion for summary judgment. The trial court also denied Southampton's request for damages under section 202.004 of the Texas Property Code though it did order Sanchez to pay Southampton's attorney's fees. We affirm.

This case concerns the three-foot-wide strip of land between Sanchez's house and the public alleyway behind it. The alleyway itself is eight feet wide and part of an alleyway system established in 1923 in the Southampton Place subdivision in Houston. The trust agreement creating both the subdivision and the alleyway establishes deed restrictions throughout the subdivision. It provides in relevant part:

> Each and every deed or other instrument which may vest in any person or corporation any title or interest in any lot, lots or other property in said project or addition, shall expressly reserve to the Trustee and its successors a right of easement and the right of ingress to a strip of land three (3) feet in width over, along and across the extreme rear end of each and all said lots and tracts. Such easement to be used by the Trustee and its successors and assigns for the laying of gas mains, water mains, storm and sanitary sewer laterals and connections, and electric light poles, telephone poles and other proper or necessary public utility other than railroad, street railway, and other transportation lines. And this right of easement and use is hereby expressly reserved to the Trustee and its successors in this tract, and when this trust shall have been fully executed and terminated, then such easement and right shall vest in the City of Houston, and it shall have full authority to permit the use of such right-of-way for proper municipal purposes as herein stipulated and no permanent improvements or buildings shall ever be erected thereon which will interfere with the use of said easement for the purposes for which it is reserved.

The alleyway has served residents in myriad ways; for many residents, it is the only route to enter their garages. Most importantly for this appeal, the alleyway has continuously been used for garbage collection throughout the subdivision. The side-loading garbage trucks the City of Houston currently uses are too large to traverse the

alleyway, so the city allows Southampton to contract with a private garbage-collection company. The company Southampton has chosen uses eight-foot-wide back-loading garbage trucks with garbage collectors who ride on the back of the trucks and empty residents' garbage directly into the trucks by hand.

In 2007, prompted by the steady accretion of obstructions in the alleyway, Southampton undertook a new enforcement policy regarding residential use of the three-foot tracts of land on either side of the alleyways. It had traditionally allowed residents to encroach into those tracts, but reversed that policy to ensure that garbage collection could continue within the alleyways. Southampton grandfathered in all existing encroachments at that point on the basis that they had been made in good-faith reliance on the old enforcement policy, but it banned all future construction from the three-foot tracts. Sanchez moved into the subdivision in 2009 and immediately began constructing a new fence within the three-foot tract on his property. After several meetings with Southampton representatives, in which they told him about the 2007 enforcement policy and asked him to stop, Sanchez continued to build the fence.

Southampton sued Sanchez, seeking a permanent injunction ordering him to demolish and remove all parts of the fence and certain elements of his landscaping that encroached on the three-foot tract. Southampton also sought to collect attorney's fees and civil damages under section 202.004 of the Texas Property Code. Sanchez filed a motion to dismiss for lack of standing[1] and a motion for summary judgment. Southampton responded with its own motion for summary judgment. The trial court ruled:

> (i)     Southampton Civic Club, Inc. has standing to assert the claim in Plaintiff's Original Petition and Application for Permanent Injunction that Patricio D. Sanchez is in violation of the 1923 Restrictions of the Southampton Place subdivision and the alley easement/right of way contained therein and further has standing to enforce the 1923 Restrictions, including the alley easement/rights of way therein;

---

[1] Southampton's standing is not at issue in this appeal.

(ii) Patricio D. Sanchez has violated the 1923 Restrictions of Southampton Place subdivision by erecting a fence and landscaping that intrude into the three-foot (3′) easement/right of way adjoining the eight-foot (8′) alley;

(iii) The request of Southampton Civic Club, Inc. for civil damages from Patricio D. Sanchez under [section 202.004(c) of] the Texas Property Code is DENIED; and

(iv) Patricio D. Sanchez is hereby ordered to demolish and remove all parts of the fence and landscaping that intrude into the easement/right of way described hereinabove which were constructed or planted by or at the direction of Patricio D. Sanchez behind his residential real property . . . .

The trial court postponed enforcement of its order until after Sanchez had exhausted his appeals, and ordered Sanchez to pay Southampton's attorney's fees. Both parties timely appealed.

## II

## A

We review a trial court's grant of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 861 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). A movant must establish its right to summary judgment by showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Weingarten Realty*, 343 S.W.3d at 861. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Joe*, 145 S.W.3d at 157; *Weingarten Realty*, 343 S.W.3d at 861. We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *Weingarten Realty*, 343 S.W.3d at 861. When we review cross-motions for summary judgment, we consider both motions and render the judgment that the trial court

4

should have rendered. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *Weingarten Realty*, 343 S.W.3d at 862.

B

We review a trial court's failure to assess section 202.004 damages under an abuse-of-discretion standard. *See Air Park-Dallas Zoning Comm. v. Crow Billingsly Airpark, Ltd.*, 109 S.W.3d 900, 912 (Tex. App.—Dallas 2003, no pet.). That section of the Property Code provides: "A trial court *may* assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." Tex. Prop. Code § 202.004(c) (emphasis added). Use of the word "may" in a statute creates discretionary authority. Tex. Gov't Code § 311.016(1).

We may not conclude that a trial court abused its discretion merely because it committed an error of judgment or if, in the same circumstances, we would have ruled differently. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). The test is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. *Id.* Instead, a trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

III

The parties presented little evidence in the trial court. This is because, though the parties disagree how the law should apply to the facts of this case, the facts themselves are undisputed.

A

Initially, we note that the language used in the 1923 trust agreement sets out a restrictive covenant, and we reject Sanchez's argument to the contrary. The Texas Property Code defines a restrictive covenant as "any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or

5

administrative," and it requires that a restrictive covenant "shall be liberally construed to give effect to its purposes and intent." Tex. Prop. Code §§ 202.001(4), 202.003(a).[2]

In construing a restrictive covenant, our primary task is to determine the intent of the framers of the covenant. *Oldfield v. City of Houston*, 15 S.W.3d 219, 223 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), *superseded by statute on other grounds as recognized in Truong v. City of Houston*, 99 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In that regard, we must decide whether the restrictive covenant is ambiguous, which is a question of law. *Id.* at 224. If it is unambiguous, then its construction is also a question of law. *Id.* Like any contract, a restrictive covenant is unambiguous as a matter of law if it can be given a definite or certain legal meaning. *Id.*

We think the restrictive covenant is unambiguous. The trust agreement provides that the three-foot tracts are "to be used by the Trustee and its successors and assigns for the laying of gas mains, water mains, storm and sanitary sewer laterals and connections, and electric light poles, telephone poles and other proper or necessary public utility other than railroad, street railway, and other transportation lines." Relying on longstanding precedent, we hold that garbage collection is a public utility falling within the boundaries of the restrictive covenant at issue. *See Moore v. Logan*, 10 S.W.2d 428, 434 (Tex. Civ. App.—Beaumont 1928, writ dism'd).

> The collection and disposal of garbage in a city is a very important service, as much so as the furnishing of pure and wholesome water or an efficient sewerage system. It requires a vast physical equipment, including an incinerator, all owned and operated by the city, and we think must be held to be a public utility of the city.

*Id.* We find that logic as persuasive today as it was in 1928, five years after the deed restrictions in this case were written. The fact that a private contractor—as opposed to a

---

[2] This is consistent with a 1984 decision from the First Court of Appeals considering the very same deed restrictions. *See Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The nature of the deed restrictions was not at issue in *Finkelstein*, but the defendants in the case acknowledged they were "parties to and beneficiaries of the restrictive covenants imposed on all residential lots in the subdivision." *Id.* at 275.

6

government agency—is collecting the garbage has no bearing on whether the activity is a public utility. *See City of Wichita Falls v. Kemp Hotel Operating Co.*, 162 S.W.2d 150, 153 (Tex. Civ. App.—Fort Worth 1942), *aff'd*, 170 S.W.2d 217 (Tex. 1943) ("It is the public service of ridding premises of waste and equipment used in connection therewith which constitute the public utility.").

B

Sanchez relies on a decision from an Oklahoma court of appeals to argue that, even if garbage collection is a public utility, it is not the type of public utility that the drafters of the trust agreement contemplated. *See City of Elk City v. Coffey*, 562 P.2d 160 (Okla. Civ. App. 1977). Though decisions from other jurisdictions are certainly not determinative, we may recognize them as persuasive. *See Transport Ins. Co. v. Polk*, 388 S.W.2d 474, 476 (Tex. Civ. App.—Fort Worth 1965), *aff'd*, 400 S.W.2d 881 (Tex. 1966); *see also Mauzy v. Legislative Redistricting Bd.*, 471 S.W.2d 570, 573 (Tex. 1971) (cases from other jurisdictions are merely persuasive and not determinative even when facts are almost identical). However, we find the facts in *Coffey* distinguishable from those here.

In *Coffey*, the relevant instrument provided:

We further certify that we have caused said real-estate to be surveyed into lots, blocks, avenues, alleys, and utility easements and have caused a plat to be made of said tract, showing dimensions of said lots, building lines, alleys, utility easements, and streets, we hereby designate said tract as 'Roberts Addition' to the City of Elk City, Oklahoma, and hereby dedicate for public use all the streets and alleys within said 'Roberts Addition' and reserve *for installation and maintenance of utilities* the easements shown on said plat which is hereto attached.

*Coffey*, 562 P.2d at 161–62 (emphasis added). Elk City sought to use the easement as a thoroughfare for its garbage trucks. *Id.* at 162. The court held that this was an impermissible use of the easement because the easement was "restricted to utilities which can be installed and which may require maintenance." *Id.* at 163.

7

*Coffey* is distinguishable from this case. The trust agreement in this case reserves the three-foot tracts "for the laying of gas mains, water mains, storm and sanitary sewer laterals and connections, and electric light poles, telephone poles and other proper or necessary public utility." The limitations on the easement thus fall into three categories. First, the easement may be used "for the laying of gas mains, water mains, storm and sanitary sewer laterals and connections." Second, the easement may also be sued for "electric light poles, telephone poles and other proper or necessary public utility." The third category lists the utilities for which the easement may *not* be used: "railroad, street railway, and other transportation lines."

Sanchez correctly points out that "the laying of" is functionally equivalent to "the installation of," as used in *Coffey*. But not all of the uses provided for in the trust agreement can be laid. Gas mains, water mains, and storm and sanitary sewer laterals and connections are laid, but electric light poles and telephone poles are not laid—they are erected. So the trust agreement does not restrict the easement to public utilities that can be laid. Instead, it unambiguously sets broad limits on the utilities which may use the easement, excluding only "railroad, street railway, and other transportation lines." It is not evident that the trust agreement's framers intended any constraint similar to *Coffey*'s installation restriction.

We conclude that the subdivision's garbage collection is a proper public-utility use of the three-foot tract.

C

Likewise, we conclude that Sanchez's fence and landscaping violate the trust agreement's deed restrictions. It is undisputed that the garbage trucks used in the subdivision are eight-feet wide—the same width as the alleyway. It is also undisputed that, without the adjoining three-foot tracts on either side of the alleyway, the garbage trucks would have difficulty passing through the alleyways and the garbage collectors would be unable to move alongside the trucks. Finally, it is undisputed that Sanchez's

fence and landscaping encroach on the three-foot tract at the rear of his property designated for public-utility use in the 1923 trust agreement.

Southampton need not show anything else to prove Sanchez has violated the deed restrictions. The restrictions set out that "no permanent improvements or buildings shall ever be erected [on the three-foot strip of land at issue] which will interfere with the use of said easement for the purposes for which it is reserved." Sanchez's fence and landscaping are permanent improvements which interfere with garbage collection in the subdivision. It is immaterial that the record contains no affidavits from the City of Houston alleging such interference. The city has delegated oversight of garbage collection to Southampton, and Southampton alleges interference—as do several residents of the subdivision—in affidavits filed in the trial court. Sanchez's only response to such allegations is that garbage collection continues to occur twice weekly throughout the subdivision. But just because garbage collection occurs despite the encroachment does not mean the encroachment is no interference.

We hold that the trial court correctly determined that Sanchez has violated the deed restrictions. We also affirm the trial court's award of attorney's fees to Southampton. Sanchez's sole argument against the award is that the underlying judgment was erroneous. *See* Tex. Prop. Code § 5.006(a) (mandating that courts award reasonable attorney's fees to the prevailing party in actions for breach of a restrictive covenant pertaining to real property). Because we conclude the underlying judgment was correct, we affirm the award of attorney's fees.

D

Now we turn to the trial court's refusal to assess civil damages. Damages assessed under section 202.004 of the Property Code are unrelated to the type or extent of injury or harm caused by the violation. *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 937 (Tex. App.—Houston [1st Dist.] 2010, no pet.). As a result, section 202.004 damages are punitive rather than compensatory. *Id.* Southampton argues that the only guiding

9

principle permissible for the trial court to consider was the conduct of the parties. We agree, but we think the record supports the trial court's refusal to award damages.

Most notably, the trial court could have determined that Sanchez was acting in good faith when he violated the deed restrictions and participated in this litigation. In *Uptegraph*, one of the trial court's findings was essential to its award of damages under section 202.004: "Defendants knowingly, intentionally and deliberately disregarded the restrictive covenants in constructing the fence in issue." *Id.* at 936. There is no such finding in this case. Sanchez did ignore Southampton's allegations that he was in violation of the deed restrictions, but there is no indication he knew his action violated the deed restrictions and did it anyway. In fact, his entire argument on appeal is that Southampton's allegations were unfounded and the deed restrictions do not apply to the improvements he made on his property. As a result, we find no abuse of discretion in the trial court's refusal to assess civil damages.

\* \* \*

For the foregoing reasons, we affirm the judgment below.

/s/    Jeffrey V. Brown
       Justice

Panel consists of Justices Brown, Boyce, and McCally. (McCally, J., dissenting).